**In the Matter of the Grand Jury Proceedings re Will LEWIS, Applicant.**
**Misc. No. 4281.**

United States District Court,
C. D. California.

June 24, 1974.

eral Grand Jury for the Central District of California to report to the Court the failure of the witness, Will Lewis, to produce evidence before them pursuant to a Federal Grand Jury subpoena duces tecum.

The procedural record in this case shows as follows:

1. That on or about June 11, 1974 this Court issued a subpoena duces tecum directing Will Lewis to appear before the Federal Grand Jury to give testimony and to bring with him the following items:

"original copy received of a communique from the Weather Underground, entitled same, consisting of three pages dated May 31, 1974 and envelope received therein; and the original of the tape recording which station KPFK played at about noon on June 7, 1974 on its station, purporting to be a message to the public from Patricia Hearst, Emily Harris and William Harris."

2. That the above mentioned subpoena was duly served upon Will Lewis on June 11, 1974.

3. That on June 12, 1974, before any appearance of the witness, Will Lewis, before the Grand Jury, Will Lewis caused to be filed a Motion to Quash the subpoena which motion was denied by the Court without prejudice to the witness, Will Lewis.

4. That on June 12, 1974, after the above described proceedings, Will Lewis appeared before the Federal Grand Jury without bringing with him the items set out in the subpoena duces tecum and at that time refused to answer various questions propounded to him on the basis of his rights under various constitutional bases including the First Amendment right to freedom of the press and the Fifth Amendment right not to incriminate himself.

5. That on June 12, 1974, after Will Lewis had concluded his appearance before the Grand Jury, the Grand Jury re-

William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Chief, Crim. Div., Arthur W. Vance, Jr., Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

David B. Finkel, of Finkel & Herring, Los Angeles, Cal., for applicant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW FOR CIVIL CONTEMPT

HAUK, District Judge.

This matter came before the Court on June 19, 1974 on the request of the Fed-

ported to this Court the witness' failure to bring with him the items described in the subpoena duces tecum and his failure to answer various questions. At that time, in open court, the Court set June 17, 1974 as the date upon which a hearing to determine whether or not Will Lewis should be held in contempt would take place, and ordered the parties to file appropriate pleadings and memoranda of law.

6. On June 17, 1974, the witness having filed a Supplemental Memorandum of Points and Authorities in Support of Motion to Quash Subpoena Duces Tecum and the Government having filed its Motion for Citation of Contempt and Opposition to Motion to Quash Subpoena, the Court convened and denied the Motion to Quash on its merits and on the Government's Application for Immunity supported by the necessary Affidavits issued an order that the witness give testimony before the Federal Grand Jury and further granted the witness, Will Lewis, use immunity as to his testimony. The Court then ordered the witness to appear on June 19, 1974 before the Federal Grand Jury to give testimony and to bring with him the items described in the subpoena duces tecum issued on June 11, 1974.

7. On June 19, 1974 the Government filed with the Court its Supplemental Memorandum, and the witness appeared before the Federal Grand Jury without bringing with him the items described in the subpoena and refused to give the testimony as ordered. The Federal Grand Jury reported the above contempt to the Court on this same date and a hearing was held on the Motion of the Government for a Citation of Contempt in which the court reporter for the Federal Grand Jury read the proceedings before the Federal Grand Jury, argument was presented on behalf of the witness and an order was issued holding the witness in contempt and ordering the witness to the custody of the United States Marshal until such time as he purged himself of contempt by providing the items listed in the subpoena and by

appearing before the Federal Grand Jury and answering their questions.

THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT

1. That the subpoena in question was served on Will Lewis on June 11, 1974 and that he read and understood the document;

2. That the items described in the subpoena exist and have been within the physical control and custody and possession of Will Lewis during the period June 11, 1974 until and including June 19, 1974;

3. That on June 19, 1974 Will Lewis appeared before the Federal Grand Jury pursuant to the subpoena and did not bring with him the items demanded and refused to answer the questions directed to him by the Assistant United States Attorney assisting the Federal Grand Jury;

4. That on May 31, 1974 Special Agent Kayleen Drissell of the Federal Bureau of Investigation (FBI) went to radio station KPFK, Los Angeles, California, in response to a telephone message from that station's personnel in which they had informed the agent that they had received a letter from the Weather Underground Group in which letter this organization claimed responsibility for the bombing of the California State Attorney General's Office which bombing had taken place at approximately 2:30 a. m. on that date.

Special Agent Drissell was informed by Will Lewis, Station Manager, that he would not be willing to supply the original letter itself, on the grounds that such refusal was justified in order to protect the confidentiality of the source of the information.

5. That on June 7, 1974 at approximately 6:30 a. m. an employee at radio station KPFK received a telephone call from an anonymous individual stating that a tape recording from Patricia Hearst had been placed behind a mattress at the rear of the station. The caller stated that the recording was in a

manilla envelope and directed that it be played over the air. The tape was played on the radio station at approximately 12:00 noon on that date.

6. That on June 7, 1974 at approximately 10:00 a. m. Special Agent John Morrison of the FBI received a phone message in which it was stated that local radio station KPFK had in its possession a tape recording from the Symbionese Liberation Army (SLA) and that as a consequence of this call, Special Agent Raymond Spruill went to such station at approximately 11:45 a. m. on the same date and interviewed Will Lewis who refused to turn over the original tape and the manilla envelope in which it was received and refused to answer questions regarding the receipt by the station of the original tape. A copy of the tape was given to the agent by Mr. Will Lewis.

7. That on June 7, 1974 Special Agents Paul Chamberlain and John Keller of the FBI went to radio station KPFK and interviewed Mr. Will Lewis and his attorney, David Finkel, at approximately 1:00 p. m. Mr. Finkel stated that he might recommend to Mr. Lewis that the station furnish the necessary information to the FBI, if they could be assured that the original tape would never be subpoenaed. Chamberlain advised Mr. Lewis that he was not in a position to comment as to whether or not the tape would ever be subpoenaed by the government. Mr. Lewis refused to turn over the tape or to answer questions about the tapes.

8. During the period from June 7 until June 19, 1974 neither Special Agents James McCauley, Paul Chamberlain, or Assistant United States Attorney Arthur W. Vance, Jr. were aware of any information which had been obtained through any electronic surveillance and that the questions asked before the Grand Jury by Mr. Vance were framed by Special Agent James McCauley.

9. That before the subpoena in question was filed, Arthur W. Vance, Jr., Assistant United States Attorney, called Mr. Arthur Norton of the Internal Security Section of the Criminal Division, Department of Justice and outlined to him the situation which he, Vance, felt required the issuance of a subpoena to Mr. Will Lewis. After a full disclosure to Mr. Norton of all the circumstances, he told Mr. Vance that he had prepared a memorandum to the Attorney General outlining the need for the subpoena and caused said memorandum to be transmitted to the Attorney General. Later, but still before the issuance of the subpoena in this case, Mr. Norton called and told Mr. Vance that the Attorney General had appeared and granted authorization for the issuance of such a Federal Grand Jury subpoena.

10. The Federal Grand Jury for the Central District of California, before which Mr. Will Lewis appeared on June 19, 1974, was investigating the possible breach of federal laws which they had good cause to believe involved the bombing of the office of the Attorney General of the State of California and the activities of the Symbionese Liberation Army within their jurisdiction.

## CONCLUSIONS OF LAW

1. That the subpoena duces tecum involved in this case is regular on its face and was legally issued to and served upon Mr. Will Lewis and was effective to demand his appearance before the Federal Grand Jury on June 19, 1974 to compel both his testimony and his delivery to the Federal Grand Jury of the items sought;

2. That as of June 17, 1974 Will Lewis was granted use immunity by this Court under the provisions of Title 18, United States Code, Section 6003, and therefore Will Lewis had no right to refuse to answer questions or provide other evidence to the Federal Grand Jury under his right against self-incrimination guaranteed by the United States Constitution;

3. That there exists in the federal law no privilege granting newsmen

a testimonial privilege which other citizens do not enjoy which would excuse this witness' failure to bring to the Federal Grand Jury the items sought or his failure to answer the questions asked before the Grand Jury;

4. That the Government has demonstrated that the Grand Jury's interest in the evidence sought is well within their investigative jurisdiction; that their interest is immediate, substantial and subordinates the interests of the witness; that there exists a substantial connection between the evidence sought and the legitimate interests of the Federal Grand Jury; and that the means used to obtain such objects and testimony have not been more drastic than is necessary to carry forward such an investigation;

5. That the witness has substantially failed to demonstrate that any confidential newsman-informant relationship existed which would justify a refusal to give compelled evidence;

6. That there exists no burden on the Government to show that they have adhered to their interdepartmental policy statements or guidelines such as the Policy Regarding Issuance of Subpoenas to, and Interrogation, Indictment, or Arrest of News Media, 28 C.F.R. § 50.10 (Oct. 26, 1973); and that although no such showing need be made, the Court finds that in this case such guidelines were properly followed in so far as they are applicable;

7. That the claim of Government use of electronic surveillance alleged in the witness' affidavit is not sufficient to cause the government to respond as set forth in Title 18, United States Code, Section 3504, because the claim is vague, speculative, insufficiently specific, undetailed, conjectural, generally unsubstantial and does not show good cause to believe that the witness or his counsel have been subjected to electronic surveillance which was or may have been utilized in connection with this case;

8. That whatever claim to a First Amendment privilege the witness in this case may have enjoyed with regard to the letter or the tape has been waived by his furnishing copies thereof to the Government's investigative agencies and by publishing their contents.

9. Pursuant to the Policy Regarding Issuance of Subpoenas to, and Interrogation, Indictment, or Arrest of News Media, *supra,* and in accordance with the holding of the United States Supreme Court in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) and the decision of the Ninth Circuit in Bursey v. United States, 466 F.2d 1059, 1083, 1090–92 (9th Cir.) reh. den. (1972). reh. denied, it is clear and evident beyond doubt that, in striking the proper balance between the public's interest in the free dissemination of ideas and information and the public's interest in effective law enforcement and the fair administration of justice, the Government has met its burden by establishing beyond any reasonable doubt that the Government's interest in the subject matter of the investigation is "immediate, substantial, and subordinating;" that there is "a substantial connection" between the information it seeks to have the witness compelled to supply and the overriding Governmental interest in the subject matter of the investigation, and that the means of obtaining the information is not more drastic than necessary to forward the asserted Governmental interest. Bursey v. United States, *supra* at 1083.

10. The foregoing Findings of Fact, insofar as they may be concluded to be Conclusions of Law, are so found by this Court to be true in all respects. Likewise, the foregoing Conclusions of Law, insofar as they may be concluded to be Findings of Fact, are so found by this Court to be true in all respects.

11. Let the appropriate judgment and order therefore be made and entered.