In the Matter of the Grand Jury Proceedings re Will LEWIS, Applicant.

In re Will LEWIS, Applicant.

Misc. No. 4443.

United States District Court,
C. D. California.

Oct. 31, 1974.

134

William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Chief, Crim. Div., Paul G. Flynn, Asst. U. S. Atty., Asst. Chief, Crim. Div., Los Angeles, Cal., for United States of America.

Lionel S. Sobel, Gould, Magaram, Riskin, Wayne & Minikes, Los Angeles, Cal., for respondent.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: CIVIL CONTEMPT

HAUK, District Judge.

This matter first came before the Court on October 18, 1974, on the request of the Federal Grand Jury for the Central District of California to report to the Court the failure of the witness, Will Lewis, to produce evidence before them pursuant to a Federal Grand Jury subpoena duces tecum.

The procedural record in this case shows as follows:

1. That on or about October 11, 1974, this Court issued a subpoena duces tecum directing Will Lewis to appear before the Federal Grand Jury to give testimony and to bring with him the following items:

"original copy of a communique, in the form of a letter, telegram, tape recording or other writing or recording, received by Will Lewis between October 5, 1974, and October 9, 1974, containing a certain message from the New World Liberation Front pertaining to certain bombings and threats of bombing by Units III or II of said New World Liberation Front, together with all envelopes, containers and/or wrappings in which said communique was delivered."

2. That the above mentioned subpoena was duly served upon Will Lewis on October 11, 1974;

3. That on October 15, 1974, Will Lewis appeared before the Grand Jury and refused to answer questions or turn over documents as commanded by the Grand Jury subpoena. The Foreman of the Grand Jury ordered Mr. Lewis to return at 10:00 A.M., on October 18, 1974;

4. That on October 18, 1974, the United States of America filed with the Court its ex parte application for immunity pursuant to Title 18, United States Code, Sections 6001, 6002 and 6003. Pursuant to that application, the Court ordered Will Lewis to give testimony before the Federal Grand Jury and to provide other information which he refused to give or to provide on the basis of his privilege against self-incrimination;

5. That prior to the appearance of Will Lewis before the Federal Grand Jury on October 18, 1974, and after having received his grant of use immunity, the motion to quash filed by Mr. Lewis on October 18, 1974, was heard and denied;

6. That on October 18, 1974, after the Court denied the motion to quash, Will Lewis once again appeared before the Federal Grand Jury without bringing with him the items set forth in the subpoena and once again refused to answer various questions propounded to him on the basis of his rights under various constitutional bases including the First Amendment right to freedom of the press and the Fifth Amendment right not to incriminate himself as well as his reliance on the Attorney General's guidelines regarding issuance of subpoenaes to news media, 28 C.F.R. § 50.10;

7. That later on October 18, 1974, after Will Lewis had concluded his appearance before the Federal Grand Jury, the Federal Grand Jury reported to this Court the witness' failure to bring with him the items described in the subpoena and his failure to answer various questions. At that time, in open court, the United States moved for the disclosure of the Grand Jury testimony of Will Lewis of October 18, 1974, in connection with its motion that Will Lewis be held in civil contempt. The motion for disclosure was granted and the Grand Jury reporter testified from her notes as to that which transpired in the Grand Jury proceeding. The Court confirmed from the Foreman of the Grand Jury that in fact the court reporter's transcription was correct and issued an Order to Show Cause re Civil Contempt. The parties were to file memoranda of law in support of their respective positions by October 25, 1974, with responses thereto to be filed by October 30, 1974. A hearing to determine whether or not Will Lewis should be held in contempt was to take place on October 31, 1974, at 9:30 A.M.;

8. That on October 31, 1974, the Court convened, argument was presented on behalf of the respondent Will Lewis and the United States of America and an order will be issued holding the witness in contempt and ordering the witness into the custody of the United States Marshal until such time as he purged himself of contempt by providing the items listed in the subpoena and by appearing before the Federal Grand Jury and answering their questions, or for the life of the Grand Jury.

THE COURT MAKES THE FOLLOWING FINDINGS OF FACT:

1. That the subpoena in question was served on Will Lewis on October 11, 1974, and that he read and understood the document;

2. That the items described in the subpoena exist and have been within the physical control, custody and possession of Will Lewis during the period from October 11, 1974, until and including October 31, 1974;

3. That on October 18, 1974, Will Lewis, after having been granted use immunity, pursuant to 18 U.S.C. § 6001 et seq., appeared before the Federal Grand Jury pursuant to the subpoena and did not bring with him the items demanded and refused to answer the

questions directed to him by the Assistant United States Attorney assisting the Federal Grand Jury;

4. That on October 8, 1974, Officers of the Los Angeles Police Department and the Federal Bureau of Investigation, working jointly in investigating the bombing of the Sheraton Airport Hotel, 9750 Airport Boulevard, Los Angeles, on October 5, 1974, became aware of the existence of a communique claiming responsibility for bombings which communique had been received by radio station KPFK. On that day Officers of the Los Angeles Police Department telephonically contacted Will Lewis and discussed with him the matter of the original communique. Will Lewis refused to turn over the communique. On the same day, two Los Angeles Police Department officers arrived at the offices of KPFK and again requested the original of the communique. Lewis once again refused. At all times the agents of the Federal Bureau of Investigation were aware of and were in fact participating in the attempts to obtain the original communique;

5. That on October 10, 1974, the Los Angeles Police Department executed a search warrant on radio station KPFK in an attempt to seize the communique in question. The search was unsuccessful;

6. That on October 11, 1974, agents of the Federal Bureau of Investigation went to the office of the United States Attorney and pointed out that they were aware of a broadcast by KPFK at approximately 11:00 A.M., on October 8, 1974, in which the station released in typed form the entire contents of the communique in question; that the Los Angeles Police Department had been unsuccessful in attempting to obtain the original of the communique; and that a search of radio station KPFK pursuant to the search warrant had been unsuccessful. The agents indicated that negotiations to obtain the original of the communique had been unsuccessful and a Grand Jury subpoena duces tecum was requested;

7. That before the subpoena in question was issued, Paul G. Flynn, Assistant United States Attorney, called Mr. Brandon Alvey of the Criminal Division, Department of Justice, and explained to him the situation which he, Flynn, felt required the issuance of a subpoena to Will Lewis. On October 11, 1974, Mr. Flynn was advised by Mr. Alvey that the Attorney General had in fact authorized the issuance of a Grand Jury subpoena duces tecum to Will Lewis;

8. That immediately prior to the issuance of the subpoena and after the Attorney General had authorized the issuance thereof, Mr. Flynn placed a call to the office of David B. Finkel, Esquire, the attorney for Will Lewis. This call was an attempt to further negotiate with Mr. Finkel with respect to the turning over of the communique. There was no response to the call;

9. That on the afternoon of October 11, 1974, at approximately 2:51 P.M., Agents Eugene B. McCarthy and John O. Kirk arrived at radio station KPFK and attempted to discuss with Will Lewis the possible turning over of the original of the communique. Since negotiations appeared impossible because Mr. Lewis refused to negotiate, the Grand Jury subpoena was served on Will Lewis;

10. That Will Lewis appeared before the Federal Grand Jury as ordered on October 15, 1974, and refused to turn over the original of the communique and answer questions as commanded by the subpoena;

11. That on October 18, 1974, the Federal Grand Jury for the Central District of California, before which Will Lewis appeared on October 15 and October 18, 1974, was investigating the possible breach of federal laws which they had good cause to believe involved the bombing of the Sheraton Airport Hotel, Los Angeles, and the activities of an organization known as the New World

Liberation Front within their jurisdiction.

## CONCLUSIONS OF LAW

1. That the subpoena duces tecum involved in this case is regular on its face and was legally issued to and served upon Mr. Will Lewis and was effective to demand his appearance before the Federal Grand Jury on October 15 and 18, 1974, to compel both his testimony and his delivery to the Federal Grand Jury of the items sought;

2. That as of October 18, 1974, Will Lewis was granted use immunity by this Court under the provisions of Title 18, United States Code, Section 6001, 6002 and 6003, and therefore Will Lewis had no right to refuse to answer questions or provide other evidence to the Federal Grand Jury under his privilege against self-incrimination guaranteed by the United States Constitution;

3. That there exists in the federal law no privilege granting newsmen a testimonial privilege which other citizens do not enjoy which would excuse this witness' failure to bring to the Federal Grand Jury the items sought or his failure to answer the questions asked before the Grand Jury;

4. That the Government has demonstrated that the Grand Jury's interest in the evidence sought is well within their investigative jurisdiction; that their interest is immediate, substantial and subordinates the interests of the witness; that there exists a substantial connection between the evidence sought and the legitimate interests of the Federal Grand Jury; and that the means used to obtain such objects and testimony have not been more drastic than is necessary to carry forward such an investigation;

5. That the witness has substantially failed to demonstrate that any confidential newsman-informant relationship existed which would justify a refusal to give compelled evidence;

6. That there exists no burden on the Government to show that they have adhered to their interdepartmental policy statements or guidelines such as the Policy Regarding Issuance of Subpoenas to, and Interrogation, Indictment, or Arrest of News Media, 28 C.F.R. § 50.10, F.R. 73–29588, Oct. 26, 1973; and further that although no such showing need be made, the Court finds that in this case such guidelines were properly followed in so far as they are applicable;

7. That whatever claim to a First Amendment privilege the witness in this case may have enjoyed with regard to the communique has been waived by his furnishing typewritten copies thereof to Federal and local investigative agencies and by publishing their contents;

7(a). The argument of counsel for Respondent Will Lewis that the California "Shield Law" for the news media, California Evidence Code, sec. 1070 as amended in 1972 should apply is patently frivolous and misleading. The argument is founded upon a partial reading of a sentence on Page 9 of a House Report No. 93–650, November 15, 1973, sending H.R. 5463 to the Committee of the Whole House from the House Committee on the Judiciary, 93rd Cong. 1st Sess. The portion quoted by counsel for Respondent is found on Page 9 thereof and refers to the *proviso* which the House Judiciary Committee placed in the new Section 501 when it refused to go along with the proposed Rule 501 of the new Federal Rules of Evidence submitted to Congress by the United States Supreme Court. The portion which counsel for Respondent quotes is found at Page 12 of his "MEMORANDUM OF POINTS AND AUTHORITIES. AND AFFIDAVITS SHOWING CAUSE WHY WILL LEWIS SHOULD NOT BE FOUND IN CONTEMPT":

> "that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason."

A full reading of the sentence and paragraph however, is as follows:

"The rationale underlying the *proviso* is that federal law should not supersede that of the States in substantive areas such as privilege absent a compelling reason. The Committee believes that in *civil* cases in the federal courts where an element of a claim or defense is not grounded upon a federal question, there is no federal interest strong enough to justify departure from State policy. In addition, the Committee considered that the Court's proposed Article V would have promoted forum shopping in some civil actions, depending upon differences in the privilege law applied as among the State and federal courts. The Committee's proviso, on the other hand, under which the federal courts are bound to apply the State's privilege law in actions founded upon a State-created right or defense, removes the incentive to 'shop'." [Emphasis Added]

Moreover, the Committee previously pointed out that the Rules of Evidence governing privileges in Federal *criminal* cases should be left as they presently are, H.R.Rep. No. 93–650, p. 8:

"The Committee amended Article V to eliminate all of the Court's specific Rules on privileges. Instead, the Committee, through a single Rule, 501 left the law of privileges in its present state and further provided that privileges shall continue to be developed by the courts of the United States under a uniform standard applicable both in civil and criminal cases. That standard, derived from Rule 26 of the Federal Rules of Criminal Procedure, mandates the application of the principles of the common law as interpreted by the courts of the United States in the light of reason and experience. The words 'person, government, State or political subdivision thereof' were added by the Committee to the lone term 'witnesses' used in Rule 26 to make clear that, as under present law, not only witnesses may have privileges,

The Committee also included in its amendment a proviso modeled after Rule 302 and similar to language added by the Committee to Rule 601 relating to the compency of witnesses. The proviso is designed to require the application of State privilege law in civil actions and proceedings governed by Erie R. Co. v. Tompkins, 304 U.S. 64, [58 S.Ct. 817, 82 L.Ed. 1188] (1938), a result in accord with current federal court decisions. See Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 555–556 n. 2 (2nd Cir. 1967). The Committee deemed the proviso to be necessary in the light of the Advisory Committee's view (see its note to Court Rule 501) that this result is not mandated under Erie."

Therefore, the complete Rule 501 as set forth in the House Bill H.R. 5463, is as follows:

(H.R. 5463, June 28, 1973, 93rd Cong. 1st Sess. p. 12)

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience: Provided that in civil actions, with respect to a claim or defense as to which State law supplies the rule of decision the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."

Even the Subcommittee Note confirms the desire of the Congress to keep intact the same rules on privilege applicable to Federal criminal cases as they have always been under Rule 26 of the Federal Rules of Criminal Procedure. The Subcommittee Note reads as follows:

"The Subcommittee eliminated the proposed specific rules on privileges

and through a single Rule, 501, left the law of privileges in its present state—to be developed by the Federal courts in accordance with the standard contained in Rule 26 of the Federal Rules of Criminal Procedure. That is, privileges shall be governed by the principles of the common law as interpreted by the courts in the light of reason and experience. The words 'person, government, State, or political subdivision thereof' were added to the lone term 'witnesses' used in Rule 26 to make clear, that, as under present law, not only witnesses may have privileges.

The proviso in Rule 501 as adopted by the Subcommittee, is modeled after Rule 302 and is similar to language added by the Subcommittee to Rule 601 relating to the competency of witnesses. It is designed to mandate the application of State privilege law in civil actions governed by Erie R. Co. v. Tompkins, 304 U.S. 64, [58 S.Ct. 817, 82 L.Ed. 1188], a result in accord with current Federal court decisions. The Subcommittee deemed the proviso to be necessary in light of the Advisory Committee's view (see its note to Court Rule 501) that this result is not mandated under *Erie.*"

This June 28, 1973, version of H.R. 5463, hereinabove quoted at pp. 11–12, to be found on Page 145 of the *Hearings* ["HEARINGS BEFORE THE SUBCOMMITTEE ON CRIMINAL JUSTICE (FORMERLY DESIGNATED AS SPECIAL SUBCOMMITTEE ON REFORM OF FEDERAL CRIMINAL LAWS) OF THE COMMITTEE ON THE JUDICIARY HOUSE OF REPRESENTATIVES NINETY-THIRD CONGRESS FIRST SESSION ON PROPOSED RULES OF EVIDENCE"] was later amended on October 10, 1974, to change the *proviso* section slightly so that the final version of the Bill H.R. 5463 was as follows, p. 369 of *Hearings:*

"Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with repect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law."

It should be noted that the Subcommittee Note remained unchanged as hereinabove quoted on p. 12.

When this Bill was sent to the Senate Judiciary Committee it was revised and then reported to the full Senate on October 11, 1974, as Senate Bill H.R. 5364, Calendar No. 1211, Senate Report 93–1277 October 11, 1974, 93rd Cong.2d Sess., accompanying the Bill to provide a specific limitation of the evidence rules governing privileges to diversity cases, 28 U.S.C. 1332, interpleader cases 28 U.S.C. 1335, and removal cases 28 U.S.C. 1441(b):

"Except as otherwise required by the Constitution of the United States or provided by act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government or state or political subdivision shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings arising under 28 U.S. C. § 1332 or 28 U.S.C. § 1335 or between citizens of different States and removed under 28 U.S.C. § 1441(b), the privilege of a witness, person, government, state or political subdivision thereof is determined in accordance with State law, unless with respect to

a particular claim of a defendant, Federal law applies the rule of decision."

■ The only conclusion we can reach, therefore, is that Congress, and particularly the House and Senate Judiciary Committees, emphatically refuted the pleas of the news media for a *Federal Shield Law* and specifically expressed their determination that the Federal rules governing evidence and privileges in Federal criminal cases, and even most Federal civil cases, in fact all except diversity, interpleader and removal, must be governed by Rule 26 of the Federal Rules of Criminal Procedure, that is:

"by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

Which brings us back once again to Branzburg v. Hayes, 408 U.S. 665, 92 S. Ct. 2646, 33 L.Ed.2d 626 (1972), Bursey v. United States, 466 F.2d 1059 (9th Cir. 1972, reh. den. Oct. 5, 1972) and the most recent case involving the very Respondent Will Lewis herein, In re Will Lewis, 501 F.2d 418 (9th Cir. 1974, affirming In re Will Lewis, 337 F.Supp. 297 (C.D.Cal.1974).

■ 8. Pursuant to the Policy Regarding Issuance of Subpoenas to, and Interrogation, Indictment, or Arrest of News Media, 28 C.F.R. § 50.10, F.R. 73–29588, Oct. 26, 1973, cited above in paragraph 6, and in accordance with the holding of the United States Supreme Court in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and the decision of the Ninth Circuit in Bursey v. United States, 466 F.2d 1059 (9th Cir. 1972, Reh. Den. Oct. 5, 1972, especially p. 1083 and pp. 1090–1092), and In re Will Lewis, 501 F.2d 418 (9th Cir. 1974), affirming In re Lewis, 377 F.Supp. 297 (D.Cal.1974), it is clear and evident beyond doubt that, in striking the proper balance between the public's interest in the free dissemination of ideas and information and the public's interest in effective law enforcement and the fair administration of justice, the Government has met its burden by establishing beyond any reasonable doubt that the Government's interest in the subject matter of the investigation is "immediate, substantial, and subordinating"; that there is "a substantial connection" between the information it seeks to have the witness compelled to supply and the overriding Governmental interest in the subject matter of the investigation, and that the means of obtaining the information is not more drastic than necessary to forward the asserted Governmental interet. Bursey v. United States, *supra*, 466 F.2d 1059 at 1083; further that the Court finds and concludes as a matter of law that the balance between any possible burden on Mr. Lewis is overwhelmingly outweighed in its balance by the overruling and substated public interest in law enforcement, Branzburg v. Hayes, 408 U.S. 665 at 690, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972);

9. The foregoing Findings of Fact, insofar as they may be concluded to be Conclusions of Law, are so found by this Court to be true in all respects. Likewise, the foregoing Conclusions of Law, insofar as they may be concluded to be Findings of Fact, are so found by this Court to be true in all respects;

10. Let the appropriate judgment and order therefore be made and entered;

11. The Clerk is directed to serve by mail copies of the foregoing upon all parties and counsel in this matter.

## JUDGMENT AND ORDER OF CIVIL CONTEMPT

The Court having held a hearing as to the contempt of the witness, and having made Findings of Fact and Conclusions of Law and having been fully advised in the premises:

It is hereby ordered, adjudged and decreed:

That Will Lewis is in Civil Contempt of this Court and of the Federal Grand Jury for his failure to provide the evidence sought by the Grand Jury dur-

ing his appearance before that body on October 18, 1974.

It is the further order of this court that Will Lewis be committed to the custody of the Attorney General of the United States and be incarcerated in a jail type facility recommended to be the Terminal Island Federal Correctional Institution for the life of the Grand Jury before whom he appeared or until such time as he purges himself of contempt by providing to the Federal Grand Jury the evidence sought by them during his appearance on October 18, 1974.

It is further hereby ordered that the Clerk shall serve by mail copies of this Judgment and Order upon all parties and counsel in this matter.