In the Matter of the Grand Jury Proceeding re Will Lewis, Applicant.

Will LEWIS, Applicant-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 74-2170.

United States Court of Appeals, Ninth Circuit.

July 19, 1974.

David B. Finkel (argued) of Finkel & Herring, Barrett S. Litt (argued), Los Angeles, Cal., for applicant-appellant.

Arthur W. Vance, Jr., Asst. U. S. Atty., (argued), Los Angeles, Cal., for respondent-appellee.

Before KOELSCH, WRIGHT and TRASK, Circuit Judges.

## OPINION

PER CURIAM:

Appellant Will Lewis appeals from a judgment of the District Court finding him in contempt for refusing to produce a document and a tape recording pursuant to subpoena by the Grand Jury and for refusing to answer questions propounded by that body.

The judgment was entered on June 19, 1974, and commitment was ordered as of that date. Under the mandate of 28 U. S.C. § 1826 we issue this opinion within the 30 day period following the filing of appeal. We affirm.

Appellant Will Lewis is the Station Manager of KPFK, a local FM radio

station with offices located in North Hollywood, California. On May 31, 1974, KPFK received a three-page mimeographed document purportedly issued by an organization calling itself "The Weather Underground," which contained information relative to a recent bombing of a government building. KPFK made copies of the document available to law enforcement agencies, produced a news broadcast about the document, and turned over the original document to the custody of appellant. KPFK was not the only news media to receive a copy of that document; others received it as well, including the *Los Angeles Times*.[1] On or about June 7, 1974, KPFK received a tape purportedly issued by "The Symbionese Liberation Army" which contained information relative to Patricia Hearst and William and Emily Harris.[2] KPFK made tape dubs of that original, made copies available to law enforcement agencies, produced a radio program based upon it and turned over the original tape to the custody of appellant. Since that time, appellant has been in possession of both the original document and the original tape.

On June 3, 1974, the Federal Grand Jury for the Central District of California was investigating the possible violation of federal laws which it had good cause to believe involved the bombing of the office of the Attorney General of the State of California and the activities of the Symbionese Liberation Army within its jurisdiction. On that date it issued a subpoena duces tecum calling for Mr. David Finkel, attorney for the station, to appear forthwith and bring with him the original of the document the station had received from persons claiming to have been responsible for the bombing. On June 5, 1974, Mr. Finkel appeared but did not produce the document requested and did not answer questions with respect to it. He told an Assistant United States Attorney that he had given the letter in question to the Station Manager, Will Lewis. He also advised the Assistant United States Attorney that he intended to claim a privilege based upon the station's right to protect the sources of news information.

Following the broadcast of the tape on June 7, 1974, the Grand Jury on June 11, 1974, issued a subpoena duces tecum to Will Lewis directing him to appear and bring with him both the letter and the tape. On June 12, Mr. Lewis appeared and stated that the document and the tape both existed and that he had access to them but that he had purposely refused to bring them before the Grand Jury. As to other questions, he declined to answer after consulting his attorney, Mr. Finkel, in an anteroom, on the ground that he was privileged to refuse under amendments to the United States Constitution numbers 1, 2, 3, 4, 5, 6, 9 and 10.

Following this appearance the district court held a hearing during which the failure of Mr. Lewis to produce the evidence requested was recounted. The court thereupon on June 12, 1974, set June 17, 1974, as the time at which it would consider a contempt citation. A formal motion for such a citation was filed at the court's instruction on June 14. On June 17, the witness was granted immunity under 18 U.S.C. §§ 6001, 6002 and 6003, and directed to reappear before the jury on June 19 at 10:00 a. m. The court further directed that any further proceedings, if required, would be taken up at 2:00 p. m. on the same day.

On the morning of June 19 Mr. Lewis again refused to produce the two items

---

1. The station had provided law enforcement officers and others a copy of the letter and a copy of the tape.

2. Finding No. 5 of the court was as follows: "5. That on June 7, 1974 at approximately 6:30 a. m. an employee at radio station KPFK received a telephone call from an anonymous individual stating that a tape recording from Patricia Hearst had been placed behind a mattress at the rear of the station. The caller stated that the recording was in a manila envelope and directed that it be played over the air. The tape was played on the radio station at approximately 12:00 noon on that date." C.T. at 73.

of physical evidence requested or to answer questions. Thereafter and at noon, the court having accelerated the time for hearing, held an evidentiary hearing at which the court reporter for the Grand Jury read the questions asked and the answers given. The court then heard argument and adjudged Mr. Lewis in contempt and ordered his incarceration. Findings of Fact and Conclusions of Law were subsequently filed.

■ Appellant's first argument is that he was not given procedural due process because of the summary and inadequate proceedings held by the court. We disagree. Recognizing the need for orderly process under Rule 42(b), Harris v. United States, 382 U.S. 162, 164–166, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), we are of the opinion that appellant was accorded the process that was due under the rule. As early as June 3, 1974, it was made plain to the station manager and his attorney that the originals of the physical evidence would be required by the Grand Jury.[3]

It was clearly announced in response that the custodian, Mr. Lewis, would refuse to produce them based upon his claimed First Amendment rights of free press and associational privacy. The demands of the Grand Jury continued until a motion for a citation for contempt was formally filed and the court announced on June 12 that a hearing would be held on June 17. That hearing was continued until June 19 and a request for a further continuance until June 24 was denied.

In United States v. Alter, 482 F.2d 1016 (9th Cir. 1973), we declared that ordinarily five days' notice of a contempt hearing constitutes a reasonable time for a respondent to prepare his defense. We noted, however, a reasonable time might well vary depending upon the circumstances in a particular case. Here appellant was well aware more than a week before the hearing on June 19 not only that the Grand Jury wanted the document and tape, but that he would be cited for contempt if he refused to produce them. Moreover, by moving to quash the subpoena and filing a brief in support of his motion, he raised the very issues that were later asserted at the contempt hearing. In these circumstances we fail to understand how Lewis was surprised or otherwise prejudiced.

Much of appellant's argument based upon lack of time to prepare is predicated upon a Supplemental Memorandum filed by the Government on June 19, 1974, at the time of the contempt hearing. This memorandum, however, was in response to appellant's Supplemental Memorandum of Points and Authorities in Support of Motion to Quash Subpoena Duces Tecum filed on Friday, June 14, prior to the hearing on Wednesday, June 19. To this memorandum was appended an affidavit of Will Lewis making for the first time the claim of illegal electronic surveillance. The Government's response contained affidavits of denial of such surveillance.

Furthermore, if we permit a late filing of a bare claim of illegal electronic surveillance to establish a new date from which orderly due process in a proceeding under Rule 42(b) is to be measured,

---

3. Finding No. 4 of the court was as follows:

"4. That on May 31, 1974 Special Agent Kayleen Drissell of the Federal Bureau of Investigation (FBI) went to radio station KPFK, Los Angeles, California, in response to a telephone message from that station's personnel in which they had informed the agent that they had received a letter from the Weather Underground Group in which letter this organization claimed responsibility for the bombing of the California State Attorney General's Office which bombing had taken place at approximately 2:30 a. m. on that date.

"Special Agent Drissell was informed by Will Lewis, station manager, that he would not be willing to supply the original letter itself, on the grounds that such refusal was justified in order to protect the confidentiality of the source of the information." C.T. at 72–73.

we invite the very mini-trials and preliminary evidentiary hearings which impede the work of the Grand Jury. United States v. Dionisio, 410 U.S. 1, 17, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973).

Here the appellant, as the station manager, and Mr. Finkel, his attorney, had been aware of the demand of the Grand Jury since June 3, 1974. Yet no claim of unauthorized surveillance had been made until June 14, just three days prior to the scheduled contempt hearing on June 17.

■ But more than that, we decide this case upon the somewhat narrow ground that the refusal of the witness to produce the original physical objects in this case does not involve an inquiry into claimed illegal surveillance. The evidence sought here was not "the primary product of an unlawful act" within 18 U.S.C. § 3504.[4] The original document from persons claiming to have been responsible for the bombing of the office of the Attorney General in Los Angeles and the original tape with the message to the public from the Symbionese Liberation Army were not requested by the Grand Jury until their existence had been established by the acts of the radio station and Mr. Lewis. The tape, or presumably a copy of it, was played over the air on June 7, and the document was made public by broadcasting its contents on May 31 and the distribution of copies thereafter. It was after this occurred that the Grand Jury requested the originals and information from their custodian. No question of confidentiality of source could be present because the presence of the tape behind a mattress near the station was disclosed by an anonymous telephone call. The document was received by the station in a manner not disclosed. In either case the existence of the items was made known by the station itself and not as a result of electronic surveillance. The demand for their production for examination could not have been the result of exploitation of illegal acts within the meaning of 18 U.S.C. § 3504.

■ Likewise, questions relating directly to the physical objects themselves, such as their condition, any changes made by the witness during his custody, where, how and by whom they were discovered or received, would also not be within the proscription of the statute, but the subject of legitimate inquiry concerning the items involved. The questions which the Grand Jury directed to the witness, Lewis, were these kinds of questions and within the above limitations. We conclude that they were proper and the trial court so ruled.

■ Finally, appellant would persuade us that to compel production of the physical objects and to answer questions about them violated his First Amendment rights of free press and associational privacy. We recognize that appellant is not forsaken by the Constitution simply because a Federal Grand Jury would obtain information from him. As the Court said in Branzburg v. Hayes, 408 U.S. 665, 707, 92 S.Ct. 2646, 2670, 33 L.Ed.2d 626 (1972):

"Finally, as we have earlier indicated, news gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amend-

4. Section 3504, in pertinent part, reads as follows: "(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

"(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act; . . ."

ment. Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth." (Footnote omitted).

An examination of the relative posture of the parties before the trial court would clearly justify the resort to the subpoenas here. There was no evidence that the requests of the Grand Jury were in the course of "official harassment of the press" and not for legitimate purposes of law enforcement. The office of the Attorney General of California had been bombed and it was public knowledge that the Symbionese Liberation Army working with a willing or coerced Patricia Hearst had engaged in violent crime of recent date. The trial court found that the requests of the Grand Jury were entirely legitimate and justified. We find them overwhelmingly so.

Further, there was no request by the suppliers of the document and the tape to keep the information contained in them private or to withhold the articles themselves from examination. Even had there been such, the lesson from *Branzburg, supra,* is that such a request, either explicit or implict, may not override the authority of the Grand Jury.

Assuming, arguendo, that appellant has standing to raise the question, we are not convinced that the court was clearly erroneous in finding as it did that the interdepartmental guidelines for the issuance of subpoenas to news media were properly followed to the extent that they were applicable.

The judgment is affirmed.

The mandate shall be issued on the tenth day following the filing of this opinion.