**Millie B. HEATHMAN et al., Petitioners,**

**v.**

**UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent.**

**No. 74–1438.**

United States Court of Appeals,
Ninth Circuit.

Aug. 26, 1974.

Richard H. Chambers, Circuit Judge, filed an opinion concurring in part and dissenting in part.

Melvyn B. Fliegel (argued) of Schwartz & Alschuler, Los Angeles, Cal., for petitioner.

Jeffrey B. Lugash (argued), Los Angeles, Cal., for real parties in interest.

Before CHAMBERS and DUNIWAY, Circuit Judges, and EAST,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

▮ Petitioners, defendants in the trial court, apply for a writ of mandamus or prohibition directing the district court to vacate its order which requires defendants' accountants to deliver to the real parties in interest, plaintiffs in the trial court, copies of the income tax returns of Prudential Management Corporation and the San Diego Trust, together with accounting materials prepared for use in making the returns. On March 27, 1974, we stayed the district court's order. The petition raises issues concerning the scope of civil discovery, the resolution of which is necessary to prevent the potential irreparable loss of defendants' claimed rights. We therefore consider the merits of defendants' claims. Pacific Car and Foundry Co. v. Pence, 9 Cir., 1968, 403 F.2d 949, 951–953; Harper and Row Publishers, Inc. v. Decker, 7 Cir., 1970, 423 F.2d 487, 492.

The contested discovery order was issued in the following context: Plaintiffs, California Professional Bureau and others, brought suit in the district court under the federal and state securities laws against petitioners and other defendants alleging the sale of securities and real estate by improper, fraudulent and unlawful means. The complaint alleged that the various defendants were linked in an entangled network of individuals, corporations and other legal entities. In an effort to determine the nature of the interrelationship among the various defendants, plaintiffs deposed a number of the parties to the lawsuit. In the course of this discovery, it was determined that many documents that plaintiffs claimed to be relevant had been lost, destroyed or were otherwise unavailable. Plaintiffs then deposed the accounting firm of Russ and Russ and served a subpoena duces tecum upon its custodian of records. During the course of the deposition, the custodian began to turn over for inspection and copying the various documents enumerated in the subpoena which pertained to the formation and administration of the Prudential Management Corporation and the San Diego Trust. Defendant Heathman is the settlor and trustee of the San Diego Trust. Defendants objected to the disclosure of the federal and state tax returns and accounting materials related to them, of Prudential Management Corporation and of the San Diego Trust claiming that such documents were privileged. The deposition was adjourned and plaintiffs moved in the district court for an order compelling production of these documents. The district court granted that discovery motion and issued the order from which defendants seek relief.

▮ Defendants' principal claim is based upon their construction of state and federal laws which, they contend, make tax returns privileged documents. Defendants bear the burden of showing that the privilege exists and applies. 8 Wright & Miller, Federal Practice & Procedure: Civil, § 2016 at 126. If they cannot do so, they then bear the more formidable burden of showing that the district court's order was an abuse of discretion. Baker v. F & F Investment, 2 Cir., 1972, 470 F.2d 778, 781.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

## APPLICABLE LAW

Defendants argue that under Baird v. Koerner, 9 Cir., 1960, 279 F.2d 623, we are compelled to apply California law which, it is asserted, recognizes that taxpayers' copies of their tax returns are privileged. They rely upon Webb v. Standard Oil Co., 1957, 49 Cal.2d 509, 319 P.2d 621.

In *Baird*, which was a federal case, not a diversity case, we held that because the relationship of attorney and client was created and controlled by state law "the nature and extent of the privilege created . . . by the attorney-client relationship" is to be determined by state law. *Id.* 279 F.2d at 632. Because *Baird* involved a civil inquiry into the identity of a person who might have been liable to pay federal taxes, that is, a federal question, the case has been cited for the broad proposition that in all cases in federal court the existence and scope of all privileges is to be determined by reference to state law. *Baird* lays down no such rule. By its own reasoning, it is limited to the attorney-client privilege. *Baird* could not, on its facts, and does not, deal with all privileges. Moreover, we held in *Baird* that in considering the scope of the attorney-client privilege, "each case must stand on its own facts, with the courts balancing the public policy considerations involved." *Id.* at 632.

In the fourteen years since the announcement of *Baird*, we have had occasion only once to rely upon it and then in a similar attorney-client situation. See United States v. Cromer, 9 Cir., 1973, 483 F.2d 99, 101–102.[1]

As the commentators have documented, in federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege. 2B Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1961), § 967 at 243; 4 Moore's Federal Practice, § 26.60 [7] at 26–255; 8 Wright & Miller, Federal Practice & Procedure, Civil § 2016 at 123; Proposed Federal Rules of Evidence, Rules 501–02. In essence, what *Baird* did was to import into federal law the state law of attorney-client privilege. This case differs from *Baird*. It does not involve a privilege long and universally upheld at common law, as *Baird* does.

■■ Reference to federal law is especially appropriate where, as here, the documents in question were prepared pursuant to federal law. We hold that the question of the existence and scope of the taxpayer's privilege, if any, to withhold tax return information is to be determined by federal law for the purposes of this federal question case.[2] *Cf.* Falsone v. United States, 5 Cir., 1953, 205 F.2d 734 (claim of accountant-client

1. All but two of the eight opinions of our sister circuits which have relied upon *Baird* have also involved the attorney-client privilege. See Hyde Construction Co. v. Koehring Co., 5 Cir., 1972, 455 F.2d 337, 340 (diversity case); United States v. Woodall, 5 Cir., 1970, 438 F.2d 1317 (federal criminal case); American Can Co. v. Citrus Feed Co., 5 Cir., 1971, 436 F.2d 1125 (diversity case—question was disqualification of attorney, not privilege); Love v. United States, 8 Cir., 1967, 386 F.2d 260, 265 (federal criminal case); Republic Gear Co. v. Borg-Warner Corp., 2 Cir., 1967, 381 F.2d 551, 556 (diversity case); Tillotson v. Boughner, 7 Cir., 1965, 350 F.2d 663, 665–666 (federal tax investigation); NLRB v. Harvey, 4 Cir., 1965, 349 F.2d 900 (federal case); Krizak v. W. C. Brooks & Sons, Inc., 4 Cir., 1963,

320 F.2d 37 (diversity case—confidentiality of accident reports to state).

2. Defendants have not suggested that state tax returns be treated differently from federal returns nor have they offered any interest that the state may have in treating state tax returns differently from federal tax returns in this case. In fact, in the case cited to us by petitioners, Webb v. Standard Oil Co., *supra*, Chief Justice Gibson pointed out that under certain circumstances some of the information contained in state and federal tax forms is identical. In light of this overlap of information and the federal nature of this litigation, we see no reason to differentiate between state and federal tax returns.

privilege). We express no opinion as to other claims of privilege.

## FEDERAL LAW

Defendants alternatively contend that their copies of tax returns and documents used in preparing them are privileged under federal law. They argue that 26 U.S.C. § 6103(a)(2), which restricts the publicity of tax returns and the disclosure of information as to persons filing income tax returns, impliedly makes their copies of tax returns privileged.

■ While it is true that some lower courts have held that § 6103(a)(2), along with 26 U.S.C. § 7213(a), reflects a public policy against disclosure of tax returns, see Federal Sav. & Loan Insur. Corp. v. Krueger, N.D.Ill., 1972, 55 F.R. D. 512, 514, defendants cite no case (and we have found none) which has held that this section makes their copies of tax returns or the underlying data privileged. Indeed, though the circuit court authority on this issue is scant, see Fulenwider v. Wheeler, 5 Cir., 1958, 262 F. 2d 97, 99; June v. George C. Peterson Co., 7 Cir., 1946, 155 F.2d 963, 967, the district courts have held in numerous cases that tax returns are subject to discovery in appropriate circumstances. See 4 Moore's Federal Practice, § 26.-61 [5.-2] at 26–294: 8 Wright & Miller, Federal Practice and Procedure, Civil § 2019 at 162–4. We hold that 26 U.S.C. § 6103(a)(2) only restricts the dissemination of tax returns by the government and that this section does not otherwise make copies of tax returns privileged.

■ Defendants also argue that the discovery of their copies of their tax returns violates their right of privacy and their right to be free from unreasonable searches and seizures. Neither of these contentions is supported by any authority. There is no merit in these constitutional claims. See Couch v. United States, 1973, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548.

■ Finally, defendants argue that the tax returns are not relevant to the instant litigation and that they should therefore have been protected from discovery. "Relevance" on discovery has a very broad meaning, Rule 26(b)(1), F. R.Civ.P., and the question is for the district court. Only in the most unusual case might we consider reviewing a decision on this question by means of an extraordinary writ. This is not such a case.

The stay of the district court's order is vacated and the petition for a writ of mandamus or prohibition is denied.

RICHARD H. CHAMBERS, Circuit Judge (concurring and dissenting):

I concur in the result reached by the majority. A writ of mandamus is available only "if ordinary remedies are inadequate and there are present exceptional and extraordinary circumstances which require the issuance of an extraordinary writ to prevent a grave miscarriage of justice." Hartley Pen Co. v. United States Dist. Ct., 287 F.2d 324, 328 (9th Cir. 1961). No such extraordinary circumstances are presented by this case.

I dissent, however, from the views expressed by the majority. Even assuming, without deciding, that it has properly distinguished Baird v. Koerner, 279 F.2d 623 (9th Cir. 1960), its views concerning the discovery of federal tax returns are inaccurate.

Although the literal language of 26 U.S.C. §§ 6103 and 7213 prohibits the disclosure of only those tax returns in the government's possession, the statutes should not be construed so narrowly. Statutes have both textual and contextual meaning. Where the wording of a statute does not express fully the policies underlying the statute, courts should "give it effect in accord with its design and purpose, sacrificing, if necessary, the literal meaning in order that

the purpose may not fail." Acheson v. Fujiko Furusho, 212 F.2d 284, 295 (9th Cir. 1954) (six-judge panel), *quoting* Ozawa v. United States, 260 U.S. 178, 194, 43 S.Ct. 65, 67 L.Ed. 199 (1922).

The most frequently mentioned policy behind the statutes protecting the confidentiality of federal tax returns is that of protecting the taxpayer's privacy. *See, e.g.,* Wiesenberger v. W. E. Hutton & Co., 35 F.R.D. 556 (S.D.N.Y.1964); Richland Wholesale Liquors v. Joseph E. Seagram & Sons, Inc., 40 F.R.D. 480 (D.S.C.1966); Kingsley v. Delaware, L. & W. R.R. Co., 20 F.R.D. 156 (S.D.N.Y. 1957). An equally important but less frequently mentioned consideration is the protection of the public fisc. *See* Federal Sav. & Loan Ass'n v. Krueger, 55 F.R.D. 512 (N.D.Ill.1972). Because of our system of taxation through self assessment, the maximization of federal revenue hinges on complete and detailed reporting by each taxpayer. Such reporting is in a large part nourished by the confidential nature of the tax returns. In these times of mushrooming federal budgets and increasing complexities in the federal tax laws, we should loathe tampering with the success of the reporting system.

That policies such as these are not to be ignored was demonstrated when Congress overruled St. Regis Paper Co. v. United States, 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). In that case *St. Regis* had filed detailed census reports with the Bureau as required by the Census Act but had retained copies of the reports in its own files. While investigating *St. Regis,* the Federal Trade Commission obtained a district court order directing *St. Regis* to turn over its copies of the reports. Before the Supreme Court, *St. Regis* argued that § 9 of the Census Act which prohibited personnel in the Department of Commerce from allowing those outside the department to examine the reports should be construed to provide the same protection for copies which are retained by the reporting party. The Court rejected this argument.

> We fully realize the importance to the public of the submission of free and full reports to the Census Bureau, but we cannot rewrite the Census Act. It does not require petitioner to keep a copy of its report nor does it grant copies of the report not in the hands of the Census Bureau an immunity from legal process. Ours is a duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result. That the statute does not do. Congress did not prohibit the use of the reports *per se* but merely restricted their use while in the hands of those persons receiving them, i.e., the government officials. . . .

*Id.* at 218, 82 S.Ct. at 295.*

The decision had an extremely adverse effect on the Bureau's ability to gather complete and accurate data. S.Rep.No. 2218, 87th Cong., 2d Sess. (1962), 1962 U.S.Code of Cong. & Admin.News 3190. Consequently, Congress quickly overruled the decision by amending § 9 to provide that copies of census reports retained by individuals are immune from legal process and inadmissible as evidence without the reporting party's

---

* The Court went on to note that "although tax returns, like these census reports, are made confidential within the government bureau . . . copies in the hands of taxpayers are held subject to discovery." This dictum was supported by citing United States v. O'Mara, 122 F.Supp. 399 (D.D.C. 1954), with the notation that O'Connell v. Olsen & Ugelstadt, 10 F.R.D. 142 (N.D.Ohio 1949), is contra. Perhaps an analysis of the tax return cases would have brought the Court to the same conclusion as reached by Congress in overruling *St. Regis.*

.consent. In recommending the amendment, the Senate Report stated, "Prior to the decision of the Supreme Court, it had been generally assumed that copies of such census reports did, in fact, have confidential status equivalent to that of the original reports filed with the Bureau of the Census." *Id.* at 3189.

The majority's observation that numerous district courts have held federal tax returns to be discoverable "in appropriate circumstances" is correct, but incomplete. It is true that several cases have held that the returns were discoverable upon a mere showing that they might contain information that would lead to other relevant information. *See, e.g.,* Jensen v. Boston Ins. Co., 20 F.R.D. 619 (N.D.Cal.1957); Connecticut Mut. Life Ins. Co. v. Shields, 18 F.R.D. 448 (S.D.N.Y.1955); Paramount Film Distrib. Corp. v. Ram, 91 F.Supp. 778 (E.D.S.C.1950). In the vast majority of cases, however, the courts have prefaced discovery with the fact that the party seeking to protect its return had chosen to litigate issues relating to its income. *See, e.g.,* Federal Sav. & Loan Ass'n v. Krueger, *supra*; Wiesenberger v. W. E. Hutton & Co., *supra*; Kingsley v. Delaware, L. & W. R.R. Co., *supra*; Connecticut Importing Co. v. Continental Distilling Corp., 1 F.R.D. 190 (D.Conn.1940).

Those latter cases demonstrate a proper balancing of the need for interpreting 26 U.S.C. §§ 6103 and 7213 narrowly in order to facilitate liberal discovery and the need for interpreting the statutes broadly in order to effectuate their underlying policies. Copies of tax returns retained by a taxpayer should be accorded the protection of 26 U.S.C. §§ 6103 and 7213, unless the taxpayer chooses to litigate issues concerning the taxpayer's income. Once the taxpayer so chooses, he waives his privilege and consents to all legitimate inquiries into his income.

Insofar as the petitioners in this case have not sought to litigate any issue concerning their income, their federal tax returns should remain privileged.