**In the Matter of the Proceedings of Witness Before the Grand Jury re Will Lewis, Respondent.**

**Will LEWIS, Respondent-Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 74–3303.

United States Court of Appeals, Ninth Circuit.

May 19, 1975.

Lionel S. Sobel, Los Angeles, Cal., for respondent-appellant.

Paul G. Flynn, Eric A. Nobles, Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for appellee.

## OPINION

Before CHAMBERS, BROWNING and GOODWIN, Circuit Judges.

PER CURIAM:

Appellant is general manager of a Los Angeles radio station. He was found guilty of contempt for refusing to comply with a federal grand jury subpoena ordering that he produce the original of a "communique," together with the envelope, wrapping or container in which the "communique" was delivered, received from a group claiming responsibility for the explosion of a bomb in a Los Angeles hotel on October 5, 1974.[1] 384 F.Supp. 133 (C.D.Cal.1974). On an earlier occasion, appellant was convicted of contempt on nearly identical facts when he refused to turn over to the grand jury the originals of similar communiques from other "underground" groups. 377 F.Supp. 297 (C.D.Cal.1974). We affirmed. In re Lewis, 501 F.2d 418 (9th Cir. 1974).

■ Appellant challenges his present conviction on three grounds. The first is that California's Newsperson's Privilege Statute, California Evidence Code § 1070, prohibits holding appellant in contempt for refusing to disclose his sources of information. Appellant's argument that the California reporter's "shield" statute applies to contempt adjudications arising out of federal grand jury proceedings rests primarily upon Baird v. Koerner, 279 F.2d 623 (9th Cir. 1960). As recently pointed out in Heathman v. United States District Court, 503 F.2d 1032, 1034 (9th Cir. 1974), however, Baird does not lay down a general rule that in all cases in federal court the existence and scope of privileges is to be determined by reference to state law. On the contrary, Baird is limited to the attorney-client privilege, and even as to that privilege, requires in federal question cases that the federal courts determine the scope of the privilege on the facts of each case, balancing the public policy considerations involved. Id. The general rule announced in Heathman is precisely contrary to the rule appellant attributes to Baird. The court said in Heathman, "[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege." Id.[2]

■ In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law. Heathman v. United States District Court, supra, 503 F.2d at 1034; Baker v. F & F Investment, 470 F.2d 778, 781–82 (2d Cir. 1972). But the rule ultimately adopted, whatever its substance, is not state law but federal common law.[3]

The holding of Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d

---

1. Appellant admitted that the items described in the subpoena existed and were under his control. He had been granted immunity under 18 U.S.C. § 6002.

2. On the other hand, state privilege law is binding in federal civil proceedings in which state law provides the rule of decision. See Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 555–56 n. 2 (2d Cir. 1967). This distinction has been codified in Rule 501 of the new Federal Rules of Evidence, Pub.L.No.93–595 (Jan. 2, 1975), which reads:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

3. See H.R.Conf.Rep.No.1597, 93d Cong., 2d Sess. 7–8 (1974), U.S.Code Cong. & Admin. News 1974, p. 7098.

626 (1972), is that the first amendment does not afford a reporter a privilege to refuse to testify before a federal grand jury as to information received in confidence. In the course of balancing the policy considerations, the Supreme Court noted that the authorities were adverse to recognition of a more generally based privilege: "It is thus not surprising that the great weight of authority is that newsmen are not exempt from the normal duty of appearing before a grand jury and answering questions relevant to a criminal investigation. At common law, courts consistently refused to recognize the existence of any privilege authorizing a newsman to refuse to reveal confidential information to a grand jury." 408 U.S. at 685, 92 S.Ct. at 2658.

It would be difficult to argue for a federal common law reporter's privilege to withhold confidential information from a federal grand jury in the face of this recent and authoritative statement that the general common law rejects such a privilege; and appellant does not make such an argument.[4] Instead, appellant contends that a qualified first amendment privilege survived *Branzburg*, and is applicable here.

The opinion of the Court in *Branzburg* stated that a reporter will be protected where a grand jury investigation is "instituted or conducted other than in good faith." 408 U.S. at 707, 92 S.Ct. at 2670. The Court continued, "Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification." 408 U.S. at 707–08, 92 S.Ct. at 2670. A similar area of protection was suggested in Justice Powell's concurring opinion (408 U.S. at 710, 92 S.Ct. at 2671):

If a newsman believes that the grand jury investigation is not being conducted in good faith he is not without remedy. Indeed, if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered.

█ Appellant has shown no basis for relief under these standards. On the prior appeal, we rejected substantially the same arguments on virtually indistinguishable facts. In re Lewis, *supra*, 501 F.2d at 422–23. The only difference between the two appeals is that this case presents the second occasion, rather than the first, upon which appellant has been served with a demand to produce material of this type. This hardly supports appellant's suggestions of harassment and discriminatory treatment. So far as appears no other reporter has received similar material twice.

█ Finally, appellant argues that in obtaining the subpoena the Department of Justice failed to comply with its own regulations. 28 C.F.R. § 50.10 (1974). Assuming appellant's standing to raise the issue (see In re Lewis, *supra*, 501 F.2d at 423), we conclude that, in the respects in which appellant challenges the Department's conduct, the Department complied with its instructions or was excused from doing so. The Department was not required to conduct further negotiations (§ 50.10(c)); appellant had made it entirely clear that such negotiations would have been fruitless.

---

4. The legislative history of Rule 501 of the Federal Rules of Evidence makes it clear that Congress intended that the courts should continue to develop the federal common law of privilege on a case-by-case basis. *See* S.Rep.No.1277, 93 Cong., 2d Sess. 6–7, 11–13 (1974); H.R.Rep.No.650, 93d Cong., 1st Sess. 8–9 (1973); H.R.Conf.Rep.No.1597, 93d Cong., 2d Sess. 7–8 (1974) U.S.Code Cong. & Admin.

News 1974, p. 7051. In presenting the Conference Report to the House, Congressman Hungate, Chairman of the House Judiciary Subcommittee on Criminal Justice, stated that Rule 501 was "not intended to freeze the law of privilege as it now exists," and that its language "permits the courts to develop a privilege for newspaperpeople on a case-by-case basis." 120 Cong.Rec. H 12254 (1974).

There was reasonable ground to believe that the items sought were essential to a successful investigation (§ 50.10(e)(2)); as appellant admitted, the identity of the self-admitted perpetrators of the bombing might be revealed by an analysis of fingerprints, or by investigation based upon specimens of handwriting or typed material obtained from the communique or its containers. An unsuccessful effort had been made to obtain the information from nonmedia sources (§ 50.10(e)(3)); government affidavits asserted that other leads as to the identity of the perpetrators had been exhausted by the FBI without success. Exigent circumstances justified inquiry beyond verification of the contents of the communique (§ 50.-10(e)(4)); the nature of the crime and the absence of other evidence required that the subpoenaed items be examined for leads as to the identity of the bombers. Finally, appellant's claim of harassment (§ 50.10(e)(5)) has no support in the record.

The judgment is affirmed.

The mandate shall be issued on the 10th day following the filing of this opinion.