Henry W. KERR et al., Petitioners,

v.

UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF CALIFORNIA, Respondent; John VAN GELDERN et al., Real Parties in Interest.

No. 74–2206.

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1975.

Certiorari Granted May 27, 1975.

See 95 S.Ct. 1988.

Karl S. Mayer, Deputy Atty. Gen. (argued), San Francisco, Cal., for petitioners.

B. E. Bergesen, III (argued), Youth Law Center, San Francisco, Cal., for real parties in interest.

James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for respondent.

Before HAMLEY, MERRILL and DUNIWAY, Circuit Judges.

## OPINION

HAMLEY, Circuit Judge:

Petitioners seek from this court a writ of mandamus or prohibition under 28 U.S.C. § 1651, vacating an order of respondent district court which granted a motion of the real parties in interest requiring petitioners to produce various documents by way of discovery under Rules 34 and 37 of the Federal Rules of Civil Procedure. We deny the petition.

The real parties in interest, who seek the documents, are seven California state prisoners who have joined as plaintiffs in a civil rights action against petitioners in the respondent district court.[1] Plaintiffs in that suit assert district court jurisdiction under 28 U.S.C. § 1343, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202. Plaintiffs brought the action on behalf of themselves and of a class, divided into several subclasses, consisting of all others similarly situated.[2]

Petitioners in this mandamus proceeding are the defendants in the civil rights action described above. They constitute the members of the California Adult Authority, two state administrative officers, their agents, employees and successors in interest, as described in the caption of the complaint.

Plaintiffs in the civil rights action seek both declaratory and injunctive relief. They request a declaratory judgment that the acts of the defendants pertaining to the revocation, rescission or suspension of parole, the fixing or refixing of sentences, and the imposition of sanctions for alleged infractions of rules, as described in numerous paragraphs of the complaint, contravene the rights of the plaintiffs and their class under the Fifth, Sixth and Eighth Amendments and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution.

The injunctive relief plaintiffs seek is an order requiring defendants and their agents to accord plaintiffs and their class certain specified procedural rights with regard to all proceedings for the revocation, suspension or rescinding of parole, the fixing or refusing to fix the terms of sentences, and the imposing of serious disciplinary sanctions. The rights sought pertain to giving notice of such proceedings, providing an opportunity to be heard, to present witnesses, and to cross-examine witnesses; according the right to be represented by counsel; providing the right to be heard by an unbiased panel or official and the right to challenge any panel or official for cause; and providing a verbatim transcript of any such hearing and a written statement of the reason for the action taken and the evidence relied on.

During the course of discovery in the civil rights action, plaintiffs served upon petitioners a set of interrogatories under Fed.R.Civ.P. 33 and a request for production of documents under Fed.R.Civ.P. 34. Petitioners made objections to the requests for documents and to certain interrogatories. As to the requested documents, petitioners also argued that an *in camera* inspection was necessary in order to determine relevancy and evaluate their claimed privileges. Plaintiffs thereupon moved under Fed.R.Civ.P. 37 to compel discovery. The district court referred the motion to a United States magistrate for findings and recommendations.

Following a hearing, the magistrate recommended that all requests for production of documents be granted, that some but not all of the interrogatories be answered, and that costs in the amount of $500 be levied against peti-

---

1. In the district court the civil rights action carries docket number C–72–2088 SAW.

2. After the petition was filed in this court, the district court entered an order providing that the suit could be maintained as a class action.

tioners under Fed.R.Civ.P. 37(a)(4). Protective orders concerning certain of the document requests were also suggested.[3]

Petitioners sought a review by the district court of the magistrate's findings and recommendations, complaining primarily about the granting of the requests for the production of documents. After such a review, the district court, with reference to the documents here in issue, followed the magistrate's recommendations, including denial of the request for *in camera* inspection. However, the district court modified the recommended protective order by being more restrictive of the persons to whom the documents in request number seven could be revealed.[4] Subsequently, the district court refused to stay the discovery order pending the disposition of this petition.

Being dissatisfied with the district court's order under Fed.R.Civ.P. 37, petitioners instituted this mandamus or prohibition proceeding and requested a stay pending its disposition. The petitioners contend that it was improper for the district court to allow discovery of the documents requested under Fed.R.Civ.P. 34, specifically those sought in requests numbers 7, 14, 15, 18, 20, 21 and 22 of the plaintiffs' request for production of documents.[5] This court stayed the district court's order on September 20, 1974, at which time it also designated this petition for oral argument.

▮ Preliminarily, it is necessary to examine the nature of the vehicle which brings the district court's order before this court for review. This is a petition for mandamus or prohibition pursuant to the All Writs Act, 28 U.S.C. § 1651.

3. Several document requests were subject to a limited time period. And with reference to request number seven, the magistrate advised limiting the revelation of the documents to plaintiffs' attorneys and the personnel in their offices.

4. The protective order with reference to request number seven, as entered by the district court, reads:

"[T]hat no . . . file of any plaintiffs, or any copy of any of its contents, and no personnel file of any member of the Adult Authority, hearing representative or executive officer, nor any copy of any of its contents, shall be shown to any person except counsel of record for the plaintiffs and no more than a total of two investigators designated by such counsel, and then only to the extent necessary to the conduct of this action."

5. The requests for documents at issue are:

"7. All files, including all personnel files, which are maintained by the Adult Authority or by the Department of Corrections, or by any officer or employee thereof, with respect to each member, each hearing representative, and the Executive Officer of the Adult Authority."

"14. Each report submitted by any member, hearing representative, Executive Officer, or any other employee or official of the Adult Authority, including without limitation all reports of the type indicated at lines 9–11 of page 21 of the aforementioned deposition."

"15. All written statements written or delivered by any member or hearing representative or the Executive Officer of the Adult Authority during the past 5 years favoring, opposing, or in any way commenting upon bills or other legislation or legislative proposal pending in the U.S. House of Representatives, the Senate of the United States, or the California Legislature."

"18. All written proposals for any change whatsoever in the organization or operation of, qualifications for, or substantive criteria and procedures to be employed by the Adult Authority, including without limitation any of the individuals or groups listed in the foregoing item."

"20. All memoranda written by the Chairman of the Adult Authority during the past 5 years, no matter to whom sent, including without limitation memoranda sent to other government organizations, agencies or officials, or to other members, hearing representatives, officials or employees of the Adult Authority."

"21. All documents in effect on November 15, 1972 which pertain to any Policy Statement or Resolution issued by the Adult Authority, including without limitation any file maintained on any Resolution or Policy Statement and all such documents executed or issued subsequent to that date."

"22. All documents, however formal or informal, issued during the *past calendar* year, which concern the Adult Authority's adoption of new policies, procedures, criteria, and the like, to be followed by members, hearing representatives, officials and employees, including without limitation all documents relating to a) Policy Statement No. 24, adopted March 27, 1973, and b) Resolution No. 129, revised and reissued May 21, 1973."

Mandamus is an extraordinary remedy. It is appropriately exercised where the district court has exceeded its jurisdiction, or has improperly failed to exercise jurisdiction, or has taken action amounting to an "usurpation of power." Will v. United States, 389 U.S. 90, 95–96, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). This court set out its standard for granting mandamus in Hartley Pen Co. v. United States District Court, etc., 287 F.2d 324, 328 (9th Cir. 1961):

> "In our view the remedy is available in an ordinary case within our jurisdiction if ordinary remedies are inadequate and there are present exceptional and extraordinary circumstances which require the issuance of an extraordinary writ to prevent a grave miscarriage of justice. . . ." [6]

From an examination of *Hartley*, three factors are evident which determine the appropriateness of granting mandamus: the degree to which the district court's actions can be legally questioned, the damage to petitioner (not correctable on appeal), and the ability to correct the district court's actions by appeal. *See* Heathman v. United States District Court, 503 F.2d 1032 (9th Cir. 1974); Belfer v. Pence, 435 F.2d 121 (9th Cir. 1970).

Petitioners first direct their attention to the documents described in request number seven. *See* note 5, *supra.* These documents consist of the personnel files maintained by petitioners pertaining to each member of the Adult Authority, each hearing representative, and the Executive Officer of the Adult Authority. On the merits of the district court order, petitioners argue that the contents of these personnel files have no relevance to the subject matter of the civil rights action, and for this reason alone, the district court discovery order should be vacated with regard to request number seven.

One of the plaintiffs' allegations in their civil rights complaint is that members and executive personnel of the Adult Authority have "no expertise in arriving at fair decisions" because of their narrow partisan backgrounds, their bias against prisoners, their inexperience, and their failure to reflect a representative cross section of the population of California. As indicated by the earlier review of the relief sought in the civil rights suit, plaintiffs do not attack the qualifications of petitioners with an expectation of obtaining a judicial determination that an Adult Authority so constituted cannot accord due process to prisoners who come before them. Instead, they expect that, by proving such an allegation, they will demonstrate the need of imposing stringent procedural requirements governing the functioning of the Adult Authority.

Since this would appear to be a proper line of attack for plaintiffs, the district court's holding of the personnel files relevant for discovery purposes is not so questionable as to invoke mandamus. For the question of relevancy "is to be more loosely construed at the discovery stage than at the trial." 8 Wright & Miller, Federal Practice and Procedure, § 2008 at 41 (1970). Thus under Fed.R.Civ.P. 26(b)(1), it is no ground for objection that information sought in pretrial discovery would not be admissible at trial, " 'if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.' . . . " Olympic Refining Company v. Carter, 332 F.2d 260, 266 (9th Cir. 1964). In addition to discovering information pertaining to a party's case in chief, it is entirely proper to obtain information for other purposes such

---

**6.** The standard, for when mandamus should be granted to review interlocutory discovery orders, is in flux between circuits. 4 Moore's Federal Practice ¶ 26.83 [9.—3] (2d ed., Supp. 1973). There is some authority for lessening the extraordinary showing necessary to invoke mandamus. Harper & Row Publishers, Inc. v. Decker, 423 F.2d 487 (7th Cir. 1970), aff'd, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971) (by an equally divided court); Pfizer, Inc. v. Lord, 456 F.2d 545 (8th Cir. 1972).

as cross-examination of adverse witnesses. *See* United States v. Meyer, 398 F.2d 66, 72 (9th Cir. 1968).

Because the issue of relevancy in discovery matters is subject to such a broad standard, a district court's decision will rarely be overturned by a petition for mandamus.[7] Heathman v. United States District Court, 503 F.2d at 1035. *Cf.* Hartley Pen Co. v. United States District Court, 287 F.2d at 328–332.

Petitioners further argue, however, that established principles of California law and federal law create an absolute or qualified privilege for the personnel files covered by request number seven and all documents sought under requests numbers fourteen, fifteen, eighteen, twenty, twenty-one and twenty-two, and for this reason discovery should not have been ordered. In the alternative, petitioners argue that, at the very least, the district court should have required *in camera* inspection to ascertain relevancy and judge the need to maintain the confidentiality of the Authority's files.

The claim of privilege under California law is based upon California Evidence Code § 1040, and California Government Code §§ 6250–6260 and 6254(f) (Supp. 1974). However, the civil rights action was instituted in federal court under a federal statute, 42 U.S.C. § 1983, which was enacted particularly to vindicate federal rights against deprivation by state action. *See* Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). As this court recently pointed out in Heathman v. United States District Court, 503 F.2d at 1034: "[I]n federal question cases the clear weight of authority and logic supports reference to federal law on the issue of the existence and scope of an asserted privilege. 2B Barron & Holtzoff, Feder-

al Practice and Procedure (Wright ed. 1961), § 967 at 243; 4 Moore's Federal Practice, § 26.60 [7] at 26–255; 8 Wright & Miller, Federal Practice & Procedure, Civil § 2016 at 123; Proposed Federal Rules of Evidence, Rules 501–02."

The state's interest is that of a litigant, and not, as in diversity cases, that of a sovereign whose law is being applied in a foreign forum. Reference to federal law in this case is necessary on the issue of the existence and scope of the claimed privilege. Heathman v. United States District Court, 503 F.2d at 1034; Fears v. Burris Manufacturing Co., 436 F.2d 1357, 1360–1361 (5th Cir. 1971); Carr v. Monroe Manufacturing Co., 431 F.2d 384, 387–389 (5th Cir. 1970); Colton v. United States, 306 F.2d 633, 636 (2d Cir. 1962).

Federal statutory law, the Freedom of Information Act, 5 U.S.C. § 552(b)(6) and (7), is relied upon by petitioners to sustain their asserted privilege. The purpose of this Act was to expand the access of the public to official records of federal agencies, subject to stated exceptions. Among the exceptions to disclosure are those set out in § 552(b)(6)—personnel and medical files, and section 552(b)(7)—"investigatory files compiled for law enforcement purposes."[8]

This Act would not create a privilege for the requested documents for two reasons. First, its language is limited to authorities "of the Government of the United States." 5 U.S.C. § 551(1). The civil rights suit involves California agencies. Secondly, the exceptions to the disclosure in the Act were not intended to create evidentiary privileges for civil discovery. *See* Verrazzano Trading Corp. v. United States, 349 F.Supp. 1401, 1403 (Cust.Ct.1972);

---

7. For an example of where the determination on relevancy was found extraordinary and mandamus invoked, *see* Sanderson v. Winner, 507 F.2d 477 (10th Cir. 1974).

We make no inference as to whether the information contained in the personnel files would be admissible at trial, as against a claim that it is irrelevant.

8. The section 552(b)(7) exception has no relationship with the kinds of documents plaintiffs seek to discover. *See* Bristol-Myers Co. v. F.T.C., 138 U.S.App.D.C. 22, 424 F.2d 935, 939–940 (1970).

Pleasant Hill Bank v. United States, 58 F.R.D. 97, 99 (W.D.Mo.1973); Hodgson v. GMAC. 54 F.R.D. 445. 446 (S.D.Fla.1972); 4 Moore's Federal Practice ¶ 26.61 [4.—3] at 26–276, 26–278 (2d ed.). They were intended only to permit the withholding of certain types of information from the public generally.

Petitioners also contend that the common law governmental privilege (encompassing and referred to sometimes as the official or state secret privilege) covers the requested documents. Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S.App.D.C. 385, 463 F.2d 788, 792–795 (1971); Carr v. Monroe Manufacturing Co., 431 F.2d at 388–390.

 These cases, however, indicate that this is only a qualified privilege, contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken, as in this case. But we do not have to reach the question of whether this privilege extends to these documents or if a further protective order in the nature of *in camera* inspection was necessary before allowing disclosure. The governmental privilege must be formally asserted and delineated in order to be raised properly. United States v. Reynolds, 345 U.S. 1, 7–8, 10–11, 73 S.Ct. 528, 97 L.Ed. 727 (1953); Carr v. Monroe Manufacturing Co., 431 F.2d at 387. *See* General Services Administration v. Benson, 415 F.2d 878, 879 (9th Cir. 1969). *Cf.* United States v. Nixon, 418 U.S. 683, 688, 94 S.Ct. 3090, 3097, 41 L.Ed.2d 1039 (1974) ("by a formal claim of privilege"); Committee for Nuclear Responsibility, Inc. v. Seaborg, 463 F.2d at 792–793 (by implication).

In United States v. Reynolds, *supra,* the Supreme Court in discussing a claimed state secret privilege stated:

"The privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party. It is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer. . . ." 345 U.S. at 7–8, 73 S.Ct. at 532.

Neither the Chairman of the Authority nor the Director of Corrections nor any official of these agencies asserted, in person or writing, any privilege in the district court.

 The claiming official must " 'have seen and considered the contents of the documents and himself have formed the view that on grounds of public interest they ought not to be produced' " [9] and state with specificity the rationale of the claimed privilege. *Reynolds* is illustrative. The Court there continued, explaining:

"Of course, even with this information before him, the trial judge was in no position to decide that the report was privileged until there had been a formal claim of privilege. Thus it was entirely proper to rule initially that petitioner had shown probable cause for discovery of the documents. Thereafter, when the formal claim of privilege was filed by the Secretary of the Air Force, under circumstances indicating a reasonable possibility that *military secrets* were involved, there was certainly a sufficient showing of privilege to cut off further demand for the document on the showing of necessity for its compulsion that had then been made." (Emphasis added.) 345 U.S. at 10–11, 73 S.Ct. at 533.

In the civil rights suit, petitioners' counsel merely raised a blanket objection covering any and all documents in request numbers 7, 14, 15, 18, 20, 21 and 22. Formally claiming a privilege should involve specifying which documents or class of documents are privileged and for what reasons, especially where the nature of the requested documents does not reveal an obviously privileged matter. *See* Pleasant Hill Bank v. United States, 58 F.R.D. at 101. Since there may be information in the requested documents which should be protected,

9. United States v. Reynolds, 345 U.S. at 8 n. 20, 73 S.Ct. at 532, quoting Duncan v. Cammell, Laird & Co. [1942] A.C. 624, 638.

the petitioners may assert a privilege to a particular document or class of documents, and perhaps seek *in camera* inspection, at the time the documents are discovered in the district court. *See* United States v. Reynolds, 345 U.S. at 10–11, 73 S.Ct. 528.

In sum, the petition fails to show such an usurpation by the district court that warrants the extraordinary remedy of writ of mandamus. In promulgating the discovery order the district court did enter some protective measures. The granting of mandamus as to discovery orders is limited, and this case does not appear to present exceptional circumstances.

The stay of this court is vacated, and the petition for mandamus or prohibition is denied.