**UNITED STATES of America and Leon B. Gossage, Special Agent, Internal Revenue Service, Petitioners,**

v.

**PROVIDENCE HOSPITAL, Respondent.**

**Civ. A. No. 80–74641.**

United States District Court,
E. D. Michigan, S. D.

Jan. 21, 1981.

Allen R. Mass, Tax Div., U. S. Dept. of Justice, Washington, D. C., for petitioners.

Seth Lloyd, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for respondent.

GUY, District Judge.

The court has before it a petition to enforce an Internal Revenue Service sum-

---

mons. The matter involves the I.R.S. investigation of the civil tax liability of Dr. James A. Bennett for the years 1976 to 1979, during which period of the time the doctor apparently filed no income tax returns. The I.R.S. is seeking information relative to operations performed by Dr. Bennett during the years under examination, which information is necessary to determine Bennett's correct tax liability for those years.

Providence Hospital, the respondent in this matter and the entity on whom the particular summons was served, raises three primary arguments in response to the Government's petition for enforcement.

■ First, the respondent points to 42 C.F.R. § 405.1026(a),[1] et seq., a section of the Medicare regulations which in literal terms prohibits disclosure of medical record information unless there is written consent of the patient presented for release. The regulations, however, do take cognizance of the fact that such records may be subpoenaed.

The court's view of the Medicare regulations is that their primary purpose is to provide the same measure of normal confidentiality that usually attaches to patients' medical records. In other words, this court believes that the concern of Congress was to ensure that access to the records by third parties was not broadened simply because Federal funding was involved. However, the court does not believe that there was any intention on the part of Congress to make patient medical records any less available than they would normally be; the court finds that such records are normally subject to subpoena or summons under proper circumstances such as this; and, therefore, that the Medicare regulations would not be a bar to the enforcement of this I.R.S. summons.

■ The second argument made by the respondent is that under the law of Michigan, there is a patient-physician privilege, and that such privilege would protect the dissemination of this information.

Without indicating whether the court would necessarily agree that under these circumstances Michigan law would protect the dissemination of such information, the court finds that case law from the Sixth Circuit has discussed this point and holds contrary to the view espoused by the respondent.

The court references particularly *General Motors Corporation v. Director of the National Institute for Occupational Safety and Health, Department of Health, Education and Welfare*, a recent Sixth Circuit decision decided on December 30, 1980, and reported at 636 F.2d 163.

In that case, the issue of medical records was discussed, and the court at 165, stated as follows:

We turn now to the central issue in this controversy—whether the Institute can obtain, in individually identifiable form, the medical records of the 490 General Motors employees who did not execute the releases. General Motors raises two objections to disclosure. First, it argues full enforcement of the subpoena would be inconsistent with Ohio Rev.Code §§ 2317.02 and 4731.22, enacted to protect the confidentiality of physician-patient communications.

We reject this analysis by noting that the Ohio privilege statute is not the controlling principle of law here. This case presents a federal question; the applicability of a privilege must, accordingly, be ascertained by reference to federal stat-

[1]. 42 C.F.R. § 405.1026(a) sets forth as one of the conditions of participation by a hospital in Medicare programs that:

A medical record is maintained for every patient admitted for care in the hospital. Such records are kept confidential. The factors explaining the standard are as follows:
(1) Only authorized personnel have access to the record.

(2) Written consent of the patient is presented as authority for release of medical information.
(3) Medical records are not removed from the hospital environment except upon subpoena.

 

utes and the common law. *Heathman v. United States District Court,* 503 F.2d 1032 (9th Cir. 1974). The common law did not recognize a physician-patient privilege at all. *Whalen v. Roe,* 429 U.S. 589, at 602, n.28, [97 S.Ct. 869, at 877, n.28, 51 L.Ed.2d 64] (1977). Neither has Congress codified the concept in a federal statute. A decision in this case based on considerations of the physician-patient relationship would, in effect, expand the scope of the "federal common law." This we decline to do.

It would thus appear that upon very recent authority of the Sixth Circuit that this court would not be following the clear rulings of the Sixth Circuit Court of Appeals if it recognized or extended such a privilege in the context of this I.R.S. summons; and, accordingly, the second argument of the respondent is rejected.

Lastly, the respondent has called the court's attention as of the day of this argument to 21 U.S.C. § 1175 relating to the confidentiality of patient records of individuals involved in a drug-abuse prevention program. The court would make the following observations relative to that statute.

First, there is no indication at this time that we are dealing with the records of any individual who would fall into that category. And, as counsel for the government appropriately suggests, it should have been the responsibility of respondent, by affidavit or in some other form, to indicate, whether records of this nature came within the ambit of the summons. Moreover, since the summons deals with operations performed by the doctor under investigation, the likelihood is minimized that we would be dealing in fact with any drug-abuse patients.

Secondly, section 1175(b)(2)(C) provide for the disclosure of such records:

> If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause, the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-pa-

tient relationship, and to the treatment services.

The court, in reviewing that section, clearly finds authority for a court order such as would be embodied in an order ordering enforcement of an I.R.S. summons; and would hold that such records, even if they do involve drug-abuse patients would be reachable.

The court specifically finds that given the narrow scope of the I.R.S. inquiry the public interest in properly enforcing the tax laws and collecting the tax revenues outweighs any potential injury by a disclosure which might be necessitated in connection with any drug-abuse patient.

For those reasons, the court finds that the I.R.S. is entitled to the enforcement of the summons as prayed for; and an appropriate order should be presented, which the court will execute.