The CREDIT LIFE INSURANCE COMPANY, et al., Plaintiffs,

v.

UNIWORLD INSURANCE COMPANY LTD., et al., Defendants.

No. C–3–81–218.

United States District Court, S. D. Ohio, W. D.

April 2, 1982.

James P. Kennedy, Herbert R. Brown, Aaron P. Rosenfeld, Columbus, Ohio, David C. Greer, Dayton, Ohio, for plaintiffs.

Paul A. Brennan, Sheldon Cohen, Palm Desert, Cal., Dennis J. Fallang, Dayton, Ohio, Terry M. Grimm, Harold C. Wheeler, Warren Baker, Chicago, Ill., Roger J. Makley, Dayton, Ohio, for defendants.

RICE, District Judge.

## I. Introduction

On April 7, 1981, the Credit Life Insurance Company, Central Penn Insurance Company, and Sterling Life Insurance Company, initiated the present action against various Defendants, including Phil C. Meisinger (Meisinger), a California citizen, CPP Insurance Agency, Inc. (CPP), a corporation organized under the laws of California, with

its principal place of business in California, and Uniworld Insurance Company, LTD (Uniworld), a corporation organized under the laws of Bermuda, with its principal place of business in Bermuda. In this diversity action, Plaintiffs sought recovery against Defendants for alleged fraudulent actions, breaches of contract, and acts of conversion arising out of business dealings between the parties relating to the sale and subsequent reinsurance of credit life, and credit accident and health insurance. On May 26, 1981, Defendants Uniworld, Meisinger, and CPP filed a motion to dismiss (Doc. # 8), alleging that they had not had sufficient contacts with the State of Ohio to permit this Court to assume *in personam* jurisdiction. In addition, two other named Defendants, Interocean Agency, Inc. (Interocean), a New York corporation, and Parker & Co-Interocean, LTD (Parker), a Bermuda corporation, filed a motion to dismiss based on this Court's lack of personal jurisdiction (Doc. # 10).

After consideration of the memoranda, affidavits and depositions submitted by the parties, the Court concluded that the present state of the record did not provide an adequate basis upon which to ascertain the interrelationship between the various corporate and individual defendants, some of whom, i.e., CPP and Frank B. Hall, had conceded jurisdiction. In particular, the documents filed raised the potential application of the alter ego doctrine as a predicate for establishing personal jurisdiction over the Defendants. Specifically, since the Defendant CPP had admitted to the Court's jurisdiction, and since the Defendants Meisinger and Uniworld were alleged to be alter egos of each other, and of CPP, further discovery on the corporate relationships and dealings between these parties was required. In addition, the possibility was present that further discovery would reveal whether or not these two defendants, as well as the others who had contested jurisdiction, had sufficient contacts with the State of Ohio to justify assertion of personal jurisdiction on a basis separate and apart

from the alter ego theory. Therefore, the Court determined that it required additional, specific information from the parties in order that a decision on the jurisdictional issues could be made. To this end, the Court filed an entry on August 14, 1981, in which it posed several questions, deemed to be related to jurisdiction, and directed that the answers to said inquiries be filed within forty-five days from the date of the entry. (*See*, Doc. # 26, attached hereto as Exhibit A).*

On September 4, 1981, the Court held an oral hearing on Plaintiffs' motion for sanctions (Doc. # 23), which had been filed on July 17, 1981, after the Defendant Meisinger, and Richard Etter, a CPP officer, had refused to answer certain questions during depositions conducted in California on June 24 and 25, 1981. During the course of this hearing, Plaintiffs indicated that certain documents, which had previously been requested by Plaintiffs on May 20, 1981, must be produced prior to a meaningful deposition of Meisinger on jurisdictional issues. Plaintiffs outlined five types of documents which were deemed to be of significance to their jurisdictional inquiry. *See*, Transcript from oral hearing of September 4, 1981, pp. 31–37, attached hereto as Exhibit B. Following this hearing, the Court filed an entry on September 10, 1981, which overruled the Plaintiffs' request for sanctions, and set forth certain observations related to the pending discovery matters. *See*, Doc. # 36, attached hereto as Exhibit C. In this entry, the Court waived the forty-five day time period set forth in the August 14, 1981 entry, and permitted Meisinger, Uniworld, and CPP to file a response to the document requests outlined by Plaintiffs on September 4, 1981.

On September 14, 1981, Defendants CPP, Meisinger, and Uniworld filed their response to the Plaintiffs' September 4th request, and indicated that while CPP would produce the first category of documents, *i.e.*, production reports, disclosure of the remaining items would be objected to on the basis of relevance, undue burden, over-

---

* Exhibits omitted for purposes of publication.

breadth, and, with respect to CPP's tax returns, privilege. In addition, Defendant Meisinger objected to production of his financial records on the ground that because he had not yet been found subject to this Court's jurisdiction, he was not required to produce any documents whatsoever. Additional memoranda directed to the September 4, 1981, request were filed on September 23 and 30, 1981, by the Plaintiffs and the above-mentioned Defendants, respectively. Prior to the Court's decision on this matter, a virtual storm of motions and memoranda ensued, which were ruled on by the Court pursuant to an entry filed February 11, 1982 (Doc. # 56, attached hereto as Exhibit D). Therein, the Court noted that all parties wished to proceed with merits discovery, and on that basis, granted a motion to compel production of documents which had been filed by Defendant Frank B. Hall. See, Exhibit D, p. 8. The Court further ordered production of the items requested on September 4, 1981, because those documents appeared to bear directly on the jurisdictional inquiries posed in the August 14, 1981 entry.

During a discovery conference held on March 5, 1982, the Defendants CPP, Meisinger, and Uniworld requested that the Court modify certain portions of the February entry. Specifically, Meisinger and Uniworld stated that because they were still contesting jurisdiction, they could not agree that merits discovery should proceed. In addition, CPP, Meisinger, and Uniworld objected to the disclosure of income tax returns, on the basis of privilege. CPP, Meisinger, and Uniworld did not file a memorandum on this issue, but provided the Court with copies of cases, both state and federal, which allegedly supported their position that tax returns are privileged and may not be ordered produced to an opposing party.

The Court held another conference call on March 11, 1982, at which time the Court observed that its February entry was overbroad, and that Meisinger and Uniworld had not, in fact, agreed to merits discovery. See, Transcript of March 11, 1982 conference, at p. 5, attached hereto as Exhibit E.

Defendants Uniworld and Meisinger again objected to production of the items requested in the Frank B. Hall document request (Doc. # 45, attached hereto as Exhibit F), on the basis that the matters sought therein were related not to jurisdiction, but to merits. See, Exhibit E, pp. 15–17. The Plaintiffs, however, as well as the Defendant, Frank B. Hall, contended that the issues of merits and jurisdiction were inextricably intertwined, and that, therefore, discovery on all of the documents requested by Frank B. Hall should be allowed. See, Exhibit E, pp. 18, 24. The Court noted that the documents requested by Frank B. Hall did appear on their face to be intertwined with both merits and discovery. See, Exhibit E, p. 26. The Court further observed that where such a situation existed, a court could order production of "so-called merits discovery." Id.; see also, Data Disc, Inc. v. Systems Technology Associates, 557 F.2d 1280, 1285 & n.2 (9th Cir. 1977).

In an attempt to resolve the discovery situation, the Court offered three alternatives: (1) an in-camera inspection of the documents requested by Frank B. Hall; (2) submission by CPP, Meisinger, and Uniworld of a list of all documents covered by Part IV of the February entry, to be followed by the Court's determination of permissible disclosure based on that list; or (3) discovery as directed by Part IV of the February entry, and then, should a finding of a lack of jurisdiction over Meisinger and/or Uniworld follow, court-ordered reimbursement from Plaintiff and Frank B. Hall, of increased Meisinger and Uniworld expenses attributable to merits discovery. See, Exhibit E, pp. 27–29. At CPP, Uniworld, and Meisinger's request, a combination of the second and third alternatives was permitted, and these Defendants, accordingly, agreed to submit by Friday, March 19, 1982, a listing of those documents which had been requested, but which were felt to be unrelated to jurisdictional issues. See, Exhibit E, p. 36. In closing, the Court again expressed its opinion that it could not order merits discovery from parties who were contesting jurisdiction, but that it

could order production where the merits and jurisdictional discovery appeared to be intertwined. *See*, Exhibit E, pp. 41–42.

On March 12, 1982, Plaintiffs and Defendant Frank B. Hall filed memoranda in opposition to Meisinger, CPP, and Uniworld's request that the Court modify the February 11, 1982 entry by deleting that portion which ordered production of their tax returns. Plaintiffs and Frank B. Hall agreed with CPP, Meisinger, and Uniworld that California law does provide a privilege against disclosure of tax returns, but contended that under Fed.R.Evid. 501, this Court is required to apply Ohio law in order to determine whether the tax returns in question must be revealed. Plaintiffs and Frank B. Hall further argued that under Ohio law, as well as federal law, tax returns are subject to disclosure.

On Friday, March 19, 1982, the Court held another discovery conference with the parties. *See*, Transcript of March 19, 1982 conference, attached hereto as Exhibit G. During that conference, the Court indicated that it had concluded that the tax returns should be produced, and that a decision explaining the basis for its ruling would be forthcoming within ten days. *See*, Exhibit G, pp. 8–9. The Court further informed the parties that the time frame for discovery on the "alter ego" theory would not be curtailed in the manner which had been suggested by the Defendants CPP, Meisinger, and Uniworld, i.e., to only those documents and records generated from the initial contacts between these parties and Plaintiffs in April, 1978, up to the filing of the within lawsuit in April, 1981. CPP, Meisinger, and Uniworld had contended that the discovery time period should be so restricted because any events which occurred either prior to the transaction in question, or after the filing of the present lawsuit, could not be said to have a nexus with the transaction, and, therefore, could not be utilized to establish jurisdiction.

The Court, however, determined, and so advised the parties, that document production could encompass a time period beginning January 1, 1977, and continuing through the present date. *See*, Exhibit G, p. 10. It seems to the Court that the objection of CPP, Meisinger, and Uniworld misapprehends the purpose and relevance of the "alter ego" inquiry herein. The information which is being elicited with regard to the potential "alter ego" status of Meisinger and Uniworld will not necessarily serve to establish that they had actual contacts with this jurisdiction. Rather, the information is pertinent to a consideration of whether the acts of these Defendants illustrate a disregard for the concept of separate corporate identity, and whether as a result, their acts, in effect, were those of a party over whom this Court concededly has personal jurisdiction, i.e., CPP. While acts occurring before or after the transaction which forms the basis of the present action, taken alone, could not be used as a basis upon which to predicate jurisdiction, they may lead to the discovery of admissible evidence, or may be relevant to the extent that they serve to establish the existence, or non-existence of a pattern of disregard of corporate formalities. *See*, Exhibit G, p. 17. It is also possible that the discovery herein may reveal the presence of sufficient Ohio contacts on the part of Meisinger and/or Uniworld so that assumption of personal jurisdiction may be proper without resort to the "alter ego" theory. However, given the present state of the record, which still contains no revelation of the matters into which specific inquiry was made seven months ago, *see*, Exhibit A, no determination regarding this issue can presently be made.

Finally, during the March 19, 1982 conference, the Court indicated to the parties that the memorandum which had been submitted by Defendants CPP, Meisinger, and Uniworld in connection with the Frank B. Hall Rule 34 request, had been received by the Court only that morning, and did not appear to be particularly helpful, since it contained only generalized responses rather than a specific listing of documents. *See*, Exhibit G, p. 11. In addition, the Court stated that it had been in trial all day and had thus been prevented from thoroughly examining the Defendants' memorandum.

*Id.* The Court indicated, however, that it would study the *memorandum* over the weekend and would convey its ruling on the matters raised therein on Monday, March 22, 1982, in order that the parties could proceed with discovery proceedings scheduled for that date in California. *See*, Exhibit G, p. 13.

On Monday, March 22, 1982, the Court held the final discovery conference, and substantially modified Part IV of the February 11, 1982 entry.[1] In the entry filed on February 11, the Court had not referred to specific items requested by Frank B. Hall, and had not distinguished between items which appeared to relate to merits as opposed to jurisdictional discovery. *See*, Exhibit D, p. 8. While the Court observed, on February 11, that certain items appeared to be directed toward merits discovery only, it ordered production of all items requested, based on the fact that it had previously concluded in the same entry that merits discovery would be permitted to proceed pending resolution of jurisdictional issues. *Id.* On March 22, 1982, however, the Court changed its position, and attempted to carefully distinguish those document requests which appeared to be related to merits only, and to limit the scope of its discovery order accordingly, by precluding discovery on documents related only to merits. To this end, the Court first observed that Frank B. Hall's motion to compel had listed only ten items deemed to be crucial to jurisdictional issues. *See*, Transcript of March 22, 1982 conference, attached hereto as Exhibit H, at p. 24. In addition, Defendants CPP, Meisinger, and Uniworld had referred to only seven of those items, and had included one other, in their March 19 memorandum. *Id.* Therefore, the Court concluded that it would address only twelve[2] of the Frank B. Hall document requests, i.e., numbers 34, 35, 44, 45, 46, 47, 48, 49, 53, 58, 59, and 60, and would assume that Frank B. Hall would concede that the remaining forty-eight items contained in its document request either related to merits, or had been honored by the Defendants. *See*, Exhibit A, p. 25. Thus, from the outset of the conference on March 22, 1982, Part IV of the February 11, 1982 entry was amended by the Court's refusal to order production of documents deemed to be merit discovery.

The remainder of the March 22, 1982 conference was devoted to a discussion of the specific document requests referred to above. The Court ordered production of those documents requested: (1) which were merits discovery properly obtainable from the Defendant CPP, which had previously conceded jurisdiction; (2) from CPP, Meisinger, and Uniworld, which were relevant to the jurisdictional issues pending before the Court; or, (3) from CPP, Meisinger, and Uniworld in which the jurisdictional facts contained in the specific documents were so intertwined with the merits that discovery must be ordered, since the particular item would have relevancy on the jurisdictional question. *See*, Exhibit H, pp. 26–35, for elaboration of the Court's reasoning regarding each item at issue. In particular, the Court ordered production of: 34; part 2 of item 35; 44; 45; 46; 47; 48; 49; 53; 58; 59, only from CPP; and 60.[3] *See*, Exhibit H, pp. 55–63.

Following the Court's recitation of its rulings, the Defendants CPP, Meisinger, and Uniworld requested that the Court grant a stay of its orders, which was refused by the Court orally, *see*, Exhibit H, p. 71, and in a written entry filed later that date.

---

1. The Defendants' Petition for Writ of Prohibition was obviously prepared prior to the March 22, 1982 conference, and does not reflect the modification of the February 11, 1982 entry. *See*, Defendants' Petition for Writ of Prohibition, p. 5.

2. Although the Court stated it would rule only on eleven document requests, it did, in fact, discuss and make rulings on the twelve requests cited in the main text.

3. With regard to document request # 10, the Court indicated that Paul Brennan, counsel for Defendants CPP, Meisinger, and Uniworld, would be permitted to assert appropriate privileges regarding his personal files, and that an *in-camera* hearing would be ordered, *if necessary*. *See*, Exhibit H, pp. 64–65.

*See*, Doc. # 63, attached hereto as Exhibit I. Having set forth the pertinent rulings and procedural events herein, the Court will next discuss the reasoning underlying its determination that the tax returns of the Defendants CPP, Meisinger, and Uniworld, if any, must be disclosed.

## II. *Disclosure of Tax Returns*

As was previously noted, Defendants CPP, Meisinger, and Uniworld, have requested that the Court modify its previous decision, which ordered production of the tax returns of the Defendants. Basically, Defendants have contended that California law, which provides a privilege against disclosure of tax returns, should be applied herein. Alternatively, Defendants have claimed that both Ohio and federal law provide a privilege against disclosure. However, the Plaintiffs and Frank B. Hall have contended that while California law does provide a privilege against discovery of tax returns, the controlling directive regarding the applicable law herein is contained in Fed.R.Evid. 501.

Fed.R.Evid. 501 indicates that:

In civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the privilege of a witness, person, government, state or political subdivision thereof shall be determined in accordance with state law.

The defense involved herein is lack of in personam jurisdiction, which is determined by reference to state law. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980) (*Welsh*). In *Samuelson v. Susen*, 576 F.2d 546 (3d Cir. 1978), the Court noted that Rule 501 did not specify which state's law should be applied, and that, therefore, resort to conflict of laws principles would be required. *See, id.* at 549–550. *Accord, Union Planters National Bank of Memphis v. ABC Records, Inc.*, 82 F.R.D. 472 (W.D.Tenn.1979). In the present case, there does not appear to be any problem determining which state law should apply, because in the area of in personam jurisdiction, "the district court applies the law of the state in which it sits subject to due process limitations." *Welsh*, 631 F.2d at 439. Thus, Ohio privilege law should be applied to determine whether the tax returns of Meisinger, Uniworld, and CPP should be produced.

In the case of *In re Frye*, 155 Ohio St. 345, 98 N.E.2d 798 (1951), the Ohio Supreme Court stated in the syllabus that:

Section 55(f)(1), Title 26, U.S.Code, a part of the Internal Revenue Act, which provides, among other things, that "it shall be unlawful ... for any person to print or publish in any manner not provided by law any income return, or any part thereof or source of income, profits, losses, or expenditures appearing in any income return" does not inhibit the disclosure by a witness as evidence in a proper judicial inquiry of the operative financial data relating to the business of a taxpayer, even though such data comprehends the elemental facts and information from which his income tax return is necessarily made up.

*Id.* at 346, 98 N.E.2d 798. This case is not precisely on point, since it dealt with an accountant's refusal to produce work sheets and memoranda made from the private books of the company being sued, and used to calculate the company's tax returns, *see, id.*, at 347–348, 98 N.E.2d 798, and not with the privileged nature of the returns themselves. The accountant claimed that if she turned over the documents, she would be subject to criminal prosecution under 26 U.S.C. § 55(f)(1), which prohibited disclosure in the manner noted in the above quotation. The Court rejected this argument, stating that the documents sought to be produced were not income tax returns. The Court then stated:

Furthermore, there is no infraction of the statute involved in this proceeding. The latter part of the statute above quoted prohibits any person from printing or publishing tax returns or sources of income, profit, losses or expenditures appearing in any income return, in any manner "not provided by law." This statute does not and could not legally inhibit the disclosure, as evidence in a

proper judicial inquiry or where required by law, of the operative financial data relating to the business of a taxpayer, even though such data comprehends the elemental facts and information from which his income tax return is necessarily made up. The law could never sanction such a sweeping prohibition of disclosure of the essential facts of the business world. It must be evident that the statute in question has no purpose or intent. *Id.* at 352–353, 98 N.E.2d 798. It could be *implied* from what the Ohio Supreme Court said in this case, that it would conclude that disclosure of the tax returns themselves would be prohibited. This theory, i.e., that returns are privileged, reflects the view of at least one district court in Ohio at that time. *See, O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142, 143 (N.D.Ohio 1949) (holding that 26 U.S.C. § 55 did not provide for production of returns upon order of a federal court, and returns would not be open for inspection until such provision was made).

██ Congress promptly responded legislatively to the decision in *St. Regis Paper Co. v. United States,* 368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240, by amending 13 U.S.C. § 9 in 1962 to provide what has been termed "an absolute privilege . . . for raw data collected by the Bureau of Census." *United States v. American Telephone & Telegraph Co.,* 86 F.R.D. 603, 648 (D.D.C. 1979). As amended, § 9 states in pertinent part:

> Copies of census reports which have been so retained [by any establishment or individual furnishing data] *shall be immune from legal process,* and *shall not,* without the consent of the individual or establishment concerned, *be admitted as evidence or used for any purpose in any action, suit or other judicial or administrative proceeding.*

(emphasis added) (parenthetical material supplied). Despite the Supreme Court's acknowledgement that tax returns were subject to disclosure, and despite the Court's clear directive regarding how an absolute privilege might be accorded, Congress has not amended the relevant portions of the Internal Revenue Code, although it has been afforded many opportunities to do so. In fact, in 1976, 26 U.S.C. § 6103 was extensively amended to provide various protections against *governmental* disclosure of tax information. In addition, 26 U.S.C. § 7213 was amended to increase the criminal penalties for improper disclosure of returns or return information. *See,* S.Rep. No.94–938, Part I, 94th Cong., 2d Sess. 347, reprinted in [1976] U.S.Cong. & Ad.News 3439, 3777. However, there is no indication in the legislative history that Congress considered according an absolute privilege to tax returns, or treating them in the same manner as it had census reports. Given the decision in *St. Regis Paper Co. v. United States,* and the repeated failure of Congress to alter the discoverable status of tax returns, as observed in that case, all of which occurred subsequent to the latest decisions of the Ohio State courts, the conclusion must be drawn that Ohio would and must follow the accepted view that tax returns are subject to discovery in civil litigation between private parties.

This Court is aware of the Sixth Circuit decision in *United Motion Theatre Co. v. Ealand,* 199 F.2d 371 (6th Cir. 1952), in which the Court, in a per curiam decision, modified a district court order by eliminating a reference therein, to *inter alia,* "copies of all tax returns." *Id.* However, it is impossible to ascertain the holding of this brief, less than one-page decision, which has never again been cited or referred to by the Sixth Circuit. In the first place, the appellee neither filed a brief nor appeared at the hearing held by the Court of Appeals. *Id.* Secondly, the portion of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), which was cited by the Sixth Circuit, provides no guidance to the Court's holding, since that portion of *Hickman* primarily indicates that while discovery is to be accorded liberal treatment, it has necessary boundaries. *See, id.* at 507, 67 S.Ct. at 391–92. The remaining cases cited by the Sixth Circuit, other than the *O'Connell* case previously referred to herein, denied discovery of tax records either because of a failure to show good cause, or because the

records already ordered to be produced would indicate the desired information. *See,* 199 F.2d at 311; *Garrett v. Faust,* 8 F.R.D. 556, 557 (E.D.Pa.1949) (denying production due to irrelevance, and failure to show good cause); *Welty v. Chute,* 2 F.R.D. 429, 430 (W.D.N.Y.1939) (denying production because information could be gained through other sources). The Sixth Circuit's citation of *O'Connell v. Olsen & Ugelstadt,* 10 F.R.D. 142 (N.D.Ohio 1949) may be merely in relation to this latter point, since the availability of other sources of information formed a basis for the *O'Connell* court's decision that tax returns should not be disclosed.

Therefore, based on the foregoing analysis, this Court concludes that Ohio law should apply to the resolution of the question under discussion, and that if the Ohio Supreme Court ruled on the discoverability of tax returns today, it would conclude, under the Supreme Court's decision in *St. Regis Paper Co. v. United States,* that tax returns may, in appropriate circumstances, be ordered produced to an opposing party in civil litigation. Having concluded that discovery of tax returns is not prohibited as a matter of law, the Court will next consider whether disclosure of the tax returns of the Defendants CPP, Uniworld, and Meisinger, would be appropriate herein.

■ Although tax returns are not privileged, there is a public policy against unnecessary disclosure, in order that taxpayers can be encouraged to file accurate returns. *Premium Service Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975). The most restrictive approach is that adopted in *Kingsley v. Delaware, Lackawanna & Western Railroad,* 20 F.R.D. 156 (S.D.N.Y. 1957), wherein the Court ruled that "where a litigant himself tenders an issue as to the amount of his income, there is no privilege against the disclosure of his tax returns and he can be compelled to obtain them from the Government if he himself does not have copies." *Id.* at 158. *Accord, Federal Savings and Loan Ins. Corp. v. Krueger,* 55 F.R.D. 512, 514 (N.D.Ill.1972). Other courts have permitted discovery of tax returns in

"appropriate circumstances." *Heathman v. United States District Court,* 503 F.2d 1032, 1035 (9th Cir. 1974) (*Heathman*). In *Heathman,* the Court did not specify which "circumstances" would be appropriate. However, in that case it appeared that other relevant documents which would disclose the interrelationship between various corporate entities were lost, or unavailable. *Id.* at 1033. The Court did not specifically refer to this factor in its decision. Instead, the Court held that "26 U.S.C. § 6103(a)(2) only restricts the dissemination of tax returns by the government and that this section does not otherwise make copies of tax returns privileged." *Id.* at 1034. *See also, Weiner v. Bache Halsey Stuart, Inc.,* 76 F.R.D. 624 (S.D.Fla.1977), wherein the Court ordered disclosure of income tax returns merely on the basis that they would be highly relevant. *See, id.* at 627.

In *Shaver v. Yacht Outward Bound,* 71 F.R.D. 561 (N.D.Ill.1972), the Court permitted discovery of federal tax returns even though the defendant's income was not strictly at issue. *See, id.,* at 564. In that case, certain issues centered on whether the yacht involved in the action was being used for a business purpose, or for pleasure at the time of the events in question therein. *Id.* The Court concluded that the business deductions on the tax returns would be relevant, and ordered the disclosure of the returns, noting that:

> As a party to this lawsuit, Erickson ought not be permitted to raise an issue upon which his tax returns may cast significant light and then claim that his returns are not subject to disclosure.

*Id.*

■ Under either theory noted above, disclosure of the tax returns in this case would be proper. The defendants have placed before the Court the issue of whether they are subject to its personal jurisdiction. Because jurisdiction has been conceded by one Defendant, CPP, with whom the Defendants Meisinger and Uniworld are alleged to be financially intertwined, to the extent of being alter egos of CPP, and each other, the income of Meisinger, CPP, and

Uniworld has been placed in issue. Alternatively, it is apparent that the tax returns of the Defendants CPP, Uniworld, and Meisinger may cast significant light on questions central to the resolution of the jurisdictional issue. As was mentioned by the Court during the Friday, March 19, 1982 hearing, the tax returns of the Defendants provide perhaps the only means of verifying certain facts pertinent to the "alter ego" theory which has been asserted by the Plaintiffs as well as by Defendant Frank B. Hall. Therefore, under the circumstances of the present case, the Court concludes that disclosure of the federal tax returns of Defendants CPP, Meisinger and Uniworld, if any, would be appropriate.

Assuming *arguendo* that federal "common law" rather than state law is applicable to the privilege question herein, *see*, Fed.R.Evid. 501, this Court would still conclude that the tax returns under consideration must be disclosed. Given the decision in *St. Regis Paper Co. v. United States, supra*, the reenactment thereafter of the relevant Internal Revenue Code provisions without appropriate modification for privilege, and the absence of instructive Sixth Circuit authority, it is apparent that the privilege suggested by the Defendants does not exist, except to the extent previously discussed herein.

If the Defendants wish additional protection against disclosure, the Court will order, as mentioned during the March 19, 1982 hearing, that federal tax returns be kept under seal and that they not be made public except by Court order. *See, Weiner v. Bache Halsey Stuart*, 76 F.R.D. 624, 627 (S.D.Fla.1977).

III. *Conclusion*

Based on the preceding discussion, the Court finds that:

(1) The permissible discovery period herein, for document production, may extend from the January 1, 1977 date outlined in the Fed.R.Civ.P. 34 request of Frank B. Hall, to the present date;

(2) Defendants Meisinger, Uniworld and CPP must disclose all federal tax returns for the relevant time period, as noted above, to the extent that such returns exist.

APPENDIX

*Exhibits* *

A—Doc. # 26 (August 14, 1981 Entry)

B—Transcript from September 4, 1981 oral hearing

C—Doc. # 36 (September 10, 1981 Entry)

D—Doc. # 56 (February 11, 1982 Entry)

E—Transcript of March 11, 1982 conference

F—Doc. # 45 (Frank B. Hall Document Request)

G—Transcript of March 19, 1982 conference

H—Transcript of March 22, 1982 conference

I—Doc. # 63 (March 22, 1982 Entry Denying Stay)

* Exhibits omitted for purposes of publication.