Peter DeMARCO, et al., as Trustees of Bricklayers and Masons' Local Union No. 5, Ohio, Health and Welfare, Pension and Vacation Funds, Plaintiffs–Appellees,

v.

C & L MASONRY, INC., and Roeper Construction, Inc., Defendants–Appellants.

No. 88–3679.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 5, 1989.

Decided Dec. 20, 1989.

Health and Welfare, Pension and Vacation Funds (Funds). The Employers are construction contractors in Ohio. The Union and the Masons Contractors' Association (the construction contractors' bargaining group) entered into a series of collective bargaining agreements (CBA's), which established, among other things, the obligation of the Employers to contribute to the Funds. The relevant CBA provision gives the Trustees power to audit the Funds:

> It is understood and agreed to that duly authorized representatives of any of the said trust funds shall have the right on written notice to audit *the financial records* of any party obligated under this agreement, *with respect to hours worked by and wages paid to all employees* upon whom the Employer is obligated.

J.App. at 22 (emphasis added).

In addition, the three Funds established under the CBA operate under the terms of three separate but identical Trust Agreements. Each Trust Agreement gives the Trustees the power to audit the records of Employers:

> Further, the trustees are empowered and authorized to engage an independent accountant to audit any *employer's records which relate to employment* of Local Union No. 5, Ohio members, or other members of [the Union], within the geographical jurisdiction of said Local Union No. 5.

*Id.* at 75 (emphasis added). Further, the Trust Agreements give the Trustees the authority to interpret the Agreements:

> The Trustees jointly shall have the power to construe the terms and provisions of this Agreement and Declaration of Trust, and *any construction adopted by the Trustees in good faith shall be binding upon the parties hereto* and all employees; provided, however, that *any construction made [by the Trustees in good faith] which shall be in contravention of or inconsistent with the then*

Karen E. Rubin and Stephen H. Daniels, argued, Thompson, Hine & Flory, Cleveland, Ohio, for plaintiffs-appellees.

Alan G. Ross, argued, Richard D. Panza, and Evelyn P. Schonberg, Wickens, Herzer & Panza, Cleveland, Ohio, for defendants-appellants.

Before KEITH, JONES and GUY, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Defendants-appellants, C & L Masonry and Roeper Construction (Employers), appeal the district court's judgment compelling them to produce three corporate records for audit. For the following reasons, we affirm.

## I.

Plaintiffs-appellees, Peter DeMarco, *et al.* (Trustees)[1] are trustees of Bricklayers and Masons' Local Union No. 5, Ohio,

---

1. The Trustees are: Peter DeMarco, Fred W. Denk, John J. Kolesar, Daniel J. McGuirk, Robert E. Nemetz, Pat Sisi, and Joseph Tomaro.

*effective collective bargaining agreements between the parties hereto, shall not be binding upon the employers....*

*Id.* at 53 (emphasis added).

The Trustees retained an independent certified public accountancy firm (Kiplinger & Co.) to develop a program for regularly auditing the records of employers that contributed to the Funds. According to the Trustees, the audit program developed by Kiplinger required each employer to produce the following documents: time cards, payroll tax returns, employee earnings record cards, the employer remittance report, the cash disbursements journal, the payroll journal, the general ledger, and corporate tax returns. On November 12, 1987, the Trustees notified each Employer of their intention to conduct audits of the records specified above. The Employers objected to an audit of three of the records which are the focal point of the present appeal—the cash disbursement journal, the general ledger, and corporate tax returns (the disputed records). Despite assurances from the Trustees that under routine circumstances none of the disputed records would leave the possession of the Employers, and despite the Trustees' willingness to enter into a confidentiality agreement with each Employer, the Employers refused to allow an audit of the disputed records.

The Employers were willing to allow the Trustees to audit the non-disputed records, but the Trustees balked at this suggestion. Instead, the Trustees filed suit in the United States District Court for the Northern District of Ohio, contending that the CBA and Trust Agreements give them the authority to audit the disputed records. Based on an affidavit from Donald W. James, a partner in a certified public accounting firm, the Trustees maintained that an examination of the disputed records is necessary in order to verify or corroborate the information found in the non-disputed records. J.App. at 160–64. The Employers presented the affidavit of Dale Stitt, a certified public accountant, which stated that the general auditing standards do not require examination of the disputed records. The Stitt affidavit explains that it

would be appropriate to examine the disputed documents only if a discrepancy is noted in the audit of the non-disputed records. *Id.* at 172–73.

Without explaining why it found that the CBA was the controlling document, the district court held that language in the CBA—"the right ... to audit financial records ... with respect to hours worked and wages paid to all employees"—gave the Trustees the power to examine *any* record that was necessary for a complete audit. The district court concluded that the determination of which documents are necessary for an audit was a "matter of professional judgment." *Id.* at 147. Upon examination of the accountants' affidavits, the court ruled that the requested audit was necessary to cross-check the accuracy and veracity of the nondisputed documents.

The district court also rejected the Employers' argument that by filing suit to audit "irrelevant" documents, the Trustees were violating their fiduciary duty and were wasting the Funds' assets. The court reiterated its finding that the disputed records were relevant. In addition, the court rejected the Employers' contention that as competitors of the Employers, the Trustees had a conflict of interest in auditing the disputed documents. The court noted that it was willing to entertain a motion for a protective order to protect the confidentiality of the documents.

## II.

■ The Employers argue that the district court misconstrued the CBA to allow an audit of the disputed records. In particular, they contend that the court omitted the term "financial" when interpreting the language: "financial records with respect to hours worked by and wages paid to employees." The Employers maintain that this is a significant omission because the disputed records are not *financial* records. We review *de novo* the construction of collective bargaining agreements and employee benefit plans. *Central States v. Kraftco, Inc.*, 799 F.2d 1098, 1109 (6th Cir.

1986) (en banc), *cert. denied*, 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147.

█ The district court ruled that the CBA is "concededly the controlling document." However, the Trustees never conceded this point, and now argue that the CBA is not controlling.[2] Upon review of the documents, we find that the CBA would be the controlling document if there were a conflict. The clause in the Trust Agreements states that any construction of the Agreements inconsistent with the CBA shall not be binding upon the Employers. In addition, the CBA is more limiting in the types of records auditable because it permits an audit of *financial records*, while the Trust Agreements allow audits of *any employer's records* which relate to employment. In case of a conflict, we agree with the district court that the CBA would be controlling. However, to properly construe the documents, we shall first determine if the audit request comports with the Trust Agreements, and then decide whether the construction of the Agreements conflicts with the CBA.

█ We first examine the Trust Agreements. In *Central States Pension Fund v. Central Transportation*, 472 U.S. 559, 566, 105 S.Ct. 2833, 2838, 86 L.Ed.2d 447 (1985), the Supreme Court construed a similar trust agreement. That trust agreement provided that the trustees could audit "the pertinent records of each employer," and that a good faith construction by the trustees would be binding upon the employers. *Id.* Relying upon the accounting profession's generally accepted auditing standards, the Court confirmed the reasonableness of the trustees' request, thereby giving the trustees the power to audit the records.

The Trust Agreements in the instant case give the Trustees the authority to look at "employer's records" that relate to employment. Similar to *Central States*, the Trust Agreements in our case provide that a good faith construction of the Agreement by the Trustees shall be binding unless it conflicts with the CBA. Following *Central States*, we must look at the professional judgment of the auditors and the generally accepted auditing standards to determine if the audit request was in good faith. The Stitt Affidavit, presented by the Employers, admits that a guide entitled "Audits of Employee Benefit Plans" states that "the nature, timing and extent of auditing procedures are matters of professional judgment." J.App. at 171. The James Affidavit presented by the Trustees explains how examining the disputed records—the cash disbursements journal, the general ledger and the corporate tax return—cross-checks the accuracy and veracity of the nondisputed records. The James Affidavit contends that scrutiny of the disputed records would: detect any suspiciously large number of checks written to an individual by an employer; serve as a cross-check against the payroll records; and reveal the existence of any "dummy" payroll company, which could pay the employees without contributing to the fund. While James' judgment of the importance of auditing the disputed records differs from Stitt's, James' professional judgment is sufficient to indicate that the Trustees' request was made in "good faith."

Our construction of the Trust Agreements, giving the Trustees the authority to audit the disputed records, does not conflict with the CBA. The major difference between the two is that the CBA refers to "financial records" while the Trust Agreements refer to "employers' records." We find that corporate tax returns, a business ledger, and the cash disbursements journal are clearly "financial records" under the plain meaning of the words. As a result, there is no conflict between the Trust Agreements and the CBA. Accordingly, we conclude that the Trust Agreements and the CBA, properly construed, give the Trustees the authority to audit the disputed records.

---

2. The Employers contend that the Trustees' argument is untimely because they failed to file a notice of appeal challenging this aspect of the district court's ruling. However, given that the Trustees throughout the proceedings have argued that the CBA is not the controlling document, we believe that this argument is properly before us.

### III.

The Employers contend that even if the CBA allows an audit of the disputed records, this request is not authorized by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* (1982), which governs the Funds. The district court implicitly held that the requested audit, as a prudent action to further the legitimate purposes of the Funds, did not exceed the mandates of ERISA. J.App. at 147. We "freely review the district court's legal conclusions." *Loudermill v. Cleveland Board of Education*, 844 F.2d 304, 308 (6th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988).

In *Central States*, 472 U.S. at 559, 105 S.Ct. at 2833, the Supreme Court determined that the audit request did not violate ERISA. Examining the policy concerns behind ERISA, most of which originated in the common law of trusts, the Court noted the duty of the Trustees to act as a "watchdog" to ensure that the plans receive all of the funds to which they are entitled. *Id.* at 571, 105 S.Ct. at 2840. However, the Court limited its holding by stating that the "auditing powers of a benefit plan are limited to prudent actions furthering the legitimate purposes of the plan." *Id.* at 582, 105 S.Ct. at 2846. The Court also noted that the "right to demand access to employer records does not reach beyond what is appropriate for the proper administration of the plans." *Id.* at 582 n. 23, 105 S.Ct. at 2846 n. 23. On the basis of this last part of *Central States*, the Employers in the instant case argue that the request to examine the disputed records goes beyond what is appropriate for the proper administration of the plan. They maintain that the audit of the disputed records is much broader than the audit in *Central States*.

Upon review of *Central States*, we hold that the instant audit request of the disputed records does not violate ERISA. The Supreme Court in *Central States* discussed the importance of the "watchdog" policies that underlie ERISA, placing a heavy presumption against finding that an audit of a fund violates ERISA. In the instant case, the trustee's request to audit was in good faith, and the professional judgment of an accountant supported the reasonableness of the audit. As such, we conclude that the audit of the disputed records to cross-check the accuracy of the other records is an appropriate method for administering the plan.

The Employers also argue that the audit is not appropriate because the disputed records contain confidential information which should not be available to the Trustees, half of whom are their competitors. We reject this argument for two reasons. First, the records are not "confidential" in the legal sense; there has been no showing that the disputed records would be protected from disclosure under Fed.R. Civ.P. Rule 26(c). *See Credit Life Insurance Co. v. Uniworld Insurance Co.*, 94 F.R.D. 113 (S.D. Ohio 1982) (tax returns and other financial information enjoy no special privilege from disclosure). Second, in its discussion of the appropriate administration of the plan in *Central States*, the Supreme Court noted that a district court "ordering an employer to comply with a particular audit demand could, upon a proper showing by the employer, limit the auditors accordingly." 472 U.S. at 582 n. 23, 105 S.Ct. at 2846 n. 23. In the instant case, the trial court and the Trustees have been willing to enter into a protective order. J.App. at 148. If a showing of prospective harm to the Employers were made, the district court could enter a protective order which limits the Trustees to reading the disputed records in the Employer's office or specifies that an independent accountant view disputed records without disclosing the information to Trustees.

### IV.

Finally, the Employers argue that the Trustees violated their duties of loyalty and care under ERISA. *See* 29 U.S.C. § 1104(a)(1)(A) (fiduciary duty of loyalty); 29 U.S.C. § 1104(a)(1)(B) (fiduciary duty of care); and 29 U.S.C. § 1104(a)(1)(D) (duty to discharge the duties in accordance with the documents and instruments governing the plan). Specifically, the Employers contend that the Trustees started an expensive

lawsuit instead of auditing the non-disputed records, wasted plan assets in an attempt to obtain records unrelated to the plan objectives, and violated a duty of fairness by asking for confidential records of a competitor.

 Upon review of the record, we affirm the district court and reject the Employers' argument for two reasons—lack of standing and lack of evidence. First, an Employer does not have standing to sue a Trustee for a breach of a fiduciary duty owed to the beneficiaries of the plan. Under 29 U.S.C. § 1132, participants, beneficiaries, and fiduciaries of ERISA trusts, or the Secretary of Labor, may bring civil actions for relief. In *Whitworth Bros. Storage Company v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221 (6th Cir.1986), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 645, 93 L.Ed.2d 701 (1986), this court ruled that ERISA does not provide a cause of action to employers on the ground of restitution of mistaken contributions. We also noted the decisions "reject[ing] employers' attempts to maintain actions for breach of fiduciary duty under ERISA." *Id.* at 226 (citing, *inter alia, Tuvia Convalescent Center v. National Union,* 717 F.2d 726, 729–30 (2d Cir.1983)).

The Employers rely upon language in *Central States* to argue that the Supreme Court gave employers standing to sue the Funds for violation of fiduciary duties. Such reliance is misplaced. The Supreme Court did indicate that if an audit request were actually an effort by the Trustees to expand plan coverage beyond that specified in the documents or to obtain information about the Employer in order to serve union goals, then the audit would violate the duty of loyalty. 472 U.S. at 571 n. 12, 105 S.Ct. at 2840 n. 12. The Court also stated that "the audit would be imprudent if it were clearly wasteful of plan assets or unrelated to legitimate plan concerns." *Id.* However, the Court said nothing about an employer's standing to sue the trustee for a fiduciary violation. As such, we conclude that the Employers do not have standing to challenge any violations of fiduciary duties by the Trustees.

 In any event, the Employers do not substantiate their claims of breach of fiduciary duty. We already have noted that the records *are relevant* and that a protective order is sufficient to ensure the confidentiality of the records. Moreover, the Employers offer no evidence to suggest that the actions of the Trustees was arbitrary and capricious—they simply argue that Trustees' interpretation of the document was wrong. Without such evidence, we conclude that the Trustees did not violate their fiduciary duties.

V.

Accordingly, for the foregoing reasons, the judgment of the district court is AFFIRMED.